JOSHUA J. POLLACK (SBN 215922)
LARY ALAN RAPPAPORT (SBN 087614)
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
jpollack@proskauer.com
lrappaport@proskauer.com

STEVEN M. BAUER (Admitted *Pro Hac Vice*)
COLIN G. CABRAL (Admitted *Pro Hac Vice*)
JOEL CAVANAUGH (Admitted *Pro Hac Vice*)
BRENDAN S. COX (Admitted *Pro Hac Vice*)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
ccabral@proskauer.com
jcavanaugh@proskauer.com
bcox@proskauer.com

Attorneys for Defendants
OFFICE DEPOT, INC., CDW CORP.,
NEWEGG INC., and PC CONNECTION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SPEEDTRACK, INC.,<br><br>                              Plaintiff,<br><br>          vs.<br><br>OFFICE DEPOT INC., et al.,<br><br>                              Defendants. | Case No. CV 07-3602 PJH<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT THAT PLAINTIFF'S INFRINGEMENT CLAIMS ARE BARRED BY RES JUDICATA, THE KESSLER DOCTRINE, AND COLLATERAL ESTOPPEL**<br><br>Date: TBD*<br>Time: TBD*<br>Court: Courtroom 3, 3rd Floor<br>Judge:  Hon. Phyllis J. Hamilton<br><br>*Subject to determination by the Court.  *See* Dkt. 94. |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................2

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................2

II.  BACKGROUND AND PROCEDURAL HISTORY ....................................................5

    A.  The *Walmart* Case.............................................................................................5

        1.  The Court's Construction of "Category Description" ...........................5

        2.  SpeedTrack's Final Infringement Contentions .......................................6

        3.  The Absence of "Category Descriptions" in the Endeca System ...........7

        4.  Endeca and Walmart's Summary Judgment of Non-
            Infringement...............................................................................................8

        5.  SpeedTrack's Appeal to the Federal Circuit.............................................9

    B.  The Present Case against Additional Endeca Customers................................10

III.  THERE ARE NO GENUINE ISSUES OF MATERIAL FACT..............................11

    A.  Standard for Summary Judgment Under Federal Rule of Civil
        Procedure 56 .........................................................................................................11

    B.  SpeedTrack Cannot Dispute that the Endeca Software Used by Each
        Endeca Customer Here Functions Identically to the Endeca
        Software Found Not To Infringe in the *Walmart* Case..............................11

    C.  SpeedTrack Cannot Dispute the Facts Showing The Relationship
        Between Endeca and the Customers Here ...................................................13

IV.  SPEEDTRACK IS BARRED BY *RES JUDICATA* FROM RE-LITIGATING
      ITS INFRINGEMENT CLAIMS AGAINST ENDECA'S CUSTOMERS...........15

    A.  SpeedTrack is Barred by the *Kessler* Doctrine from Litigating
        Infringement Actions Against the Endeca Customers for Their Use
        of Endeca's Non-Infringing Product..........................................................15

    B.  There Is Identity of Parties (or their Privies).................................................17

    C.  SpeedTrack Does Not Dispute that this Court Entered an Earlier
        Judgment on the Merits.................................................................................18

    D.  SpeedTrack's Allegations Are Based on the Same Set of Transactional
        Facts as the *Walmart* Case ........................................................................18

    E.  SpeedTrack Cannot Avoid *Res Judicata* by Now Focusing on
        Infringement Under the Doctrine of Equivalents.......................................20

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V.  COLLATERAL ESTOPPEL BARS SPEEDTRACK FROM RE-
    LITIGATING THE ISSUE OF WHETHER THE ENDECA
    CUSTOMERS' USE OF THE NON-INFRINGING PRODUCT
    INFRINGES THE '360 Patent..............................................................................22

    A.  The Issue of Infringement Was Fully and Fairly Litigated in the
        *Walmart* Case and SpeedTrack Cannot Re-Litigate that Issue Now
        by Advancing a New Infringement Argument...........................................23

VI.  CONCLUSION................................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Acumed LLC v. Stryker Corp.*,
525 F.3d 1319 (Fed. Cir. 2008).......................................................................15, 18, 20, 21

*Allen v. McCurry*,
449 U.S. 90 (1980).......................................................................................................22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................................................11

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
352 F. Supp. 2d 1119 (C.D. Cal. 2005) ...................................................................5, 24

*Aspex Eyewear, Inc. v. Zenni Optical, Inc.*,
713 F.3d 1377 (Fed. Cir. 2013).................................................................................23, 25

*Comm'r of Internal Revenue. v. Sunnen*,
333 U.S. 591 (1948).......................................................................................................15

*Dana v. E.S. Originals, Inc.*,
342 F.3d 1320 (Fed. Cir. 2003)......................................................................................24

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (U.S. 2002).............................................................................................24

*Foster v. Hallco Mfg. Co., Inc.*,
947 F.2d 469 (Fed. Cir. 1991)........................................................................................15

*Global Maintech Corp. v. AIG Techs., Inc.*,
2006 WL 354224 (D. Minn. Feb. 15, 2006) ................................................................14

*Home Diagnostics, Inc. v. Lifescan, Inc.*,
120 F. Supp. 2d 864 (N.D. Cal. 2000) .........................................................................23

*Hydranautics v. FilmTec Corp.*,
204 F.3d 880 (9th Cir. 2000) .........................................................................................22

*Jet, Inc. v. Sewage Aeration Sys.*,
223 F.3d 1360 (Fed. Cir. 2000).................................................................................4, 15

*Kessler v. Eldred*,
206 U.S. 285 (1907).................................................................................................3, 15, 16

*Kruse Tech. P'ship v. Volkswagen AG*,
No. 2012-1352, 2013 WL 5526526 (Fed. Cir. Oct. 8, 2013)........................................24

iii

*Lucent Technologies, Inc. v. Gateway, Inc.*
   525 F.3d 1200 (Fed. Cir. 2008)..................................................................................24

*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,*
   58 F.3d 616 (Fed. Cir. 1995)...................................................................................20

*MGA, Inc. v. Gen. Motors Corp.,*
   827 F.2d 729 (Fed. Cir. 1987)....................................................................3, 14, 15, 16

*Nystrom v. Trex Co., Inc.,*
   580 F.3d 1281 (Fed. Cir. 2009)..........................................................................18, 22

*Pharmacia & Upjohn Co. v. Mylan Pharma., Inc.,*
   170 F.3d 1373 (Fed Cir. 1999)................................................................................22

*Reese v. Verizon California, Inc.,*
   No. 2012-1048, 2012 WL 6634227 (Fed. Cir. 2012) ............................................23

*Roche Palo Alto LLC v. Apotex, Inc.,*
   526 F. Supp. 2d 985 (N.D. Cal. 2007) ...................................................................24

*Roche Palo Alto LLC v. Apotex, Inc.,*
   531 F.3d 1372 (Fed. Cir. 2008).....................................................................4, 20, 23

*Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.,*
   232 U.S. 413 (1914)................................................................................................15

*Shoom, Inc. v. Elec. Imaging Sys. of Am., Inc.,*
   No. C 07-05612 JSW, 2011 WL 4595212 (N.D. Cal. Oct. 4, 2011) .....................16

*SpeedTrack, Inc. v. Endeca Techs., Inc.,*
   524 Fed. App'x. 651 (Fed. Cir. 2013)...........................................................1, 9, 10

*Taylor v. Sturgell,*
   553 U.S. 880, 893-895 (2008) ...............................................................................17

*Tech. Licensing Corp. v. Thomson, Inc.,*
   738 F. Supp. 2d 1096 (E.D. Cal. 2010)..................................................................15

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,*
   617 F.3d 1296 (Fed. Cir. 2010)..............................................................................23

*Vigil v. Walt Disney Co.,*
   No. C-02-4002 MHP, 2003 WL 22016805 (N.D. Cal. Jul. 31, 2003), at *4 ....................21, 23

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,*
   520 U.S. 17 (1997).................................................................................................20

*Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n,*
   721 F.2d 1305 (Fed. Cir. 1983)..............................................................................18

iv

1

*Zip Dee, Inc. v. Dometic Corp.,*
   905 F.Supp. 535 ......................................................................................................24

2

**STATUTES**

3

35 U.S.C. § 271 .......................................................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

DEFENDANTS' NOTICE OF MOTION                                    CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that this Motion for Summary Judgment that Plaintiff's Infringement Claims are Barred by Res Judicata, the *Kessler* Doctrine, and Collateral Estoppel is being presented to the Honorable Phyllis J. Hamilton pursuant to the Court's November 7, 2013 Order and the briefing schedule set forth therein.  (Dkt. 94.)  As stated in that Order, the Court will determine whether a hearing will be conducted once briefing is complete.

Defendants CDW Corporation, Newegg Inc., Office Depot, Inc., and PC Connection, Inc., ("Defendants" or the "Endeca customers") move this Court under Fed. R. Civ. P. 56 for summary judgment that all claims in Plaintiff SpeedTrack, Inc.'s ("SpeedTrack") First Amended and Supplemental Complaint (the "Amended Complaint"), filed on June 28, 2013, are barred under (a) *res judicata*, or claim preclusion; (b) the Supreme Court's "*Kessler* doctrine," which bars suits against customers for use of a product previously found not to infringe in a suit against the supplier of that product; and (c) collateral estoppel, or issue preclusion.

From 2006 through 2013, SpeedTrack litigated an infringement case against Endeca Technologies, Inc. ("Endeca") and Walmart.com USA, LLC ("Walmart").  Endeca, the supplier of the accused technology, and Walmart, its customer, were both granted summary judgment of non-infringement by this Court.  *See* No. 06-C-7336 PJH (N.D. Cal.) (final judgment of non-infringement entered Mar. 30, 2012) (the "*Walmart* case").  The Federal Circuit affirmed.  *See SpeedTrack, Inc. v. Endeca Techs., Inc.*, 524 Fed. App'x. 651 (Fed. Cir. 2013).

SpeedTrack has now filed suit against four other Endeca customers, alleging infringement of the same patent, U.S. Patent No. 5,544,360 ("the '360 patent"), based on their use of the same Endeca Information Access Platform.

*Res judicata*, the *Kessler* doctrine, and collateral estoppel each bar SpeedTrack's claims. First, *res judicata* bars SpeedTrack from proceeding with a second suit asserting the same cause of action that was adjudicated on the merits in the *Walmart* case, and on which SpeedTrack lost – namely, an Endeca customer's alleged infringement through its use of the Endeca Information Access Platform.  The Supreme Court has extended *res judicata* in patent cases (in its *Kessler* decision), saying that because in a patent case, *technology* is the issue in the case, claim

1   preclusion applies to the allegations against *the technology* and *prevents a patent owner from*

2   *bringing infringement claims against customers based on their use of technology that has*

3   *already been found not to infringe the asserted patent.*  Finally, collateral estoppel bars

4   SpeedTrack from re-litigating the specific issue on which it lost in the *Walmart* case, namely

5   whether the accused Endeca technology infringes the '360 patent.  Once this Court held that

6   Endeca's technology does not infringe and that it is free to sell that technology, the law gives

7   Endeca the right to sell it, *and its customers the right to use it.*

8          This Motion is based on this Notice of Motion and Motion, the following Memorandum

9   of Points and Authorities, the Declaration of Brendan S. Cox ("Cox Decl.") and the exhibits

10  attached thereto filed herewith, and on such other matters as may have been filed with the Court

11  or which the Court deems proper.

12                          **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

14         When this case was stayed in 2007 pending resolution of the *Walmart* case, this Court

15  recognized that "a manufacturer and a customer in the same case [was the perfect test case],

16  because then all the issues get raised and resolved within the context of one case."  *See* Cox

17  Decl. Ex. A, October 3, 2007 Transcript of Proceedings regarding Defendants' Motion to Stay at

18  8:16-19.  And, in fact, resolution of the *Walmart* case should have been the end of this case

19  because the same issues presented here – whether the same product used in the same way

20  infringes the same patent – were raised and resolved.

21         Indeed, SpeedTrack concedes that it cannot pursue its claim of infringement by making a

22  "literal infringement" argument.  *See, e.g.,* Cox Decl., Ex. B, Nov. 6, 2013 Transcript of

23  Proceedings regarding Defendants' Motion to Dismiss at 12:10-13 ("We lost on literal

24  infringement. That's not going to come up again. Okay? We agree there's – there's collateral

25  estoppel on that issue so we're just talking about doctrine of equivalents.").

26         But, to try to keep the lawsuit against Endeca alive, SpeedTrack says it now seeks to

27  prove the same *claim* of infringement against the same Endeca product, by making a different

28  *argument* for infringement against a different Endeca customer.  But, having already asserted,

                                         2

and lost, infringement claims against both the product supplier (Endeca) *and* a "test" customer (Walmart), SpeedTrack is barred from re-litigating the question of infringement of the same patent by the same product used in the same way, regardless of the argument.

The material facts are not in dispute:

(1)    In the *Walmart* case, the "category description" limitation of the asserted claims was construed to mean "*information that includes a name that is descriptive of something about a stored file.*"  This Court found, and the Federal Circuit affirmed, that the accused numeric identifiers ( "dimension value identifiers" or "DVAL_IDs") did not meet the "category description" limitation of the asserted claims – and that the Endeca product did not infringe the '360 patent;

(2)    The Endeca software used by each of the Endeca customers here uses non-descriptive, numeric "DVAL_IDs," and therefore functions *identically* to the Endeca software accused in the *Walmart* case with regard to the relevant claim limitations of the '360 patent.

Once this Court held that Endeca's technology does not infringe and that it was free to sell that technology, the law gave Endeca the right to sell it, *and its customers the right to use it*. Because there is no genuine dispute that the Endeca software, as implemented by each customer here, is the same in all *material* respects to the Endeca software found not to infringe in the *Walmart* case, SpeedTrack's claims are barred:

*First*, the doctrine of *res judicata*, or claim preclusion, bars SpeedTrack from bringing this second suit asserting the same cause of action that was adjudicated *on the merits* in a prior case (*i.e.*, that Endeca's customers' use of Endeca's software allegedly infringes the patent). Because there is (a) an identity of the parties (or their privies)[1]; (b) an earlier final judgment on the merits; and (c) SpeedTrack's infringement claims here are based on the same nucleus of

---

[1] SpeedTrack's claims are also barred by the "*Kessler* doctrine," established by the Supreme Court in *Kessler v. Eldred*, 206 U.S. 285 (1907).  *Kessler* essentially expands the definition of "privity" in a patent case – "[t]he *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of … noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed."  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987).

transactional facts as the *Walmart* case, SpeedTrack's claims are barred – regardless of the infringement *argument* SpeedTrack seeks to advance.  *See, e.g., Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362-63 (Fed. Cir. 2000).  SpeedTrack's cause of action in the *Walmart* case was *patent infringement*, and Endeca (who intervened in that case) sought and obtained a declaration that its products (and its customers' use thereof) did not infringe.  That finding of non-infringement precludes any new infringement theories SpeedTrack might have brought – the Federal Circuit has long-recognized that the "determination of infringement is a two-step process, wherein the court [1] first construes the claims and [2] then determines whether *every claim limitation, or its equivalent, is found in the accused device.*"  *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008).  Because SpeedTrack lost on its infringement cause of action, and Endeca won on its *non-infringement* cause of action, finality demands that SpeedTrack not get a second chance to assert the same cause of action – namely, infringement of the same patent through use of the same, or materially the same, product.  It simply does not matter whether SpeedTrack has a different infringement *argument*.

*Second*, the doctrine of collateral estoppel, or issue preclusion, bars SpeedTrack from re-litigating – against *any* party – the adjudicated *issue* of whether the accused Endeca technology infringes the '360 patent, because (a) the issue of infringement here is identical to that presented in the *Walmart case*; (b) the *Walmart* case ended with a final judgment on the merits, and (c) SpeedTrack was a party to the *Walmart* case.  In the *Walmart* case, this Court determined that numbers do not meet the "category description" limitation of the claim, because they are not "*information that includes a name that is descriptive of something about a stored file.*"  SpeedTrack apparently wants this Court now to say the element has no meaning, and that non-descriptive numbers are "equivalent" to something that is descriptive.  That is nonsense, on the substance.  But, SpeedTrack's contention here is simply a different argument as to whether the claim element is present, whether literally or under the doctrine of equivalents.  That is, SpeedTrack is simply arguing here: "now that we know we lose on whether that the element is literally present, we are going to try again, but now with an argument that non-descriptive numbers are 'equivalent' to something that is descriptive."

4

When this Court found that the Endeca software had no element that fell within the "category description" limitation, that was a final finding on the *issue* of infringement. A change from one legal argument to another regarding the same issue – infringement – does not allow a party to relitigate that issue in a subsequent case. *See, e.g., Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1125 (C.D. Cal. 2005), quoting *Kamilche Co. v. U.S.*, 53 F.3d 1059, 1063 (9th Cir. 1995) ("[O]nce an issue is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case."). Accordingly, the Court should enter summary judgment that SpeedTrack is barred from asserting infringement against Endeca customers who have licensed and used a product that this Court has found does not infringe.

## II.      BACKGROUND AND PROCEDURAL HISTORY

### A.      The *Walmart* Case

On November 29, 2006, SpeedTrack filed suit against Walmart, alleging that the website of Walmart Stores (www.walmart.com) infringed the '360 patent. Because the infringement allegations against Walmart were based on Walmart's use of software provided by Endeca, Endeca moved to intervene.[2] *See Walmart* Dkt. 45.[3] The Court granted Endeca's motion to intervene on April 12, 2007. *See Walmart* Dkt. 63.

#### 1.      The Court's Construction of "Category Description"

During *Markman* proceedings in the *Walmart* case, SpeedTrack and Endeca proposed constructions of the claim term "category description" – a term that was present in every asserted claim of the '360 patent. In June 2008, after a *Markman* hearing, this Court adopted SpeedTrack's proposed construction, construing "category description" to mean "*information that includes a name that is descriptive of something about a stored file*." *See Walmart* Dkt. 132, at 5-9.

---

[2] Endeca, a Boston-area based technology company, was acquired by Oracle Corporation in 2011. Because the software at issue in the *Walmart* case and the present case was developed by Endeca, and because the *Walmart* case and Federal Circuit decision refer to Endeca, for ease of reference, Defendants refer to Endeca throughout this Memorandum, even though Endeca is now part of Oracle.

[3] Documents filed with the Court in the *Walmart* case are cited herein using "*Walmart* Dkt. ---."

DEFENDANTS' NOTICE OF MOTION                                    CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

### 2.    SpeedTrack's Final Infringement Contentions

In the *Walmart* case, Endeca and Walmart had asked that the Court enter judgment that they did not infringe "either literally or under the doctrine of equivalents."  *See Walmart* Dkt. 23, at 12 (Walmart's Counterclaim for Declaratory Judgment of Non-Infringement); *Walmart* Dkt. 68, at 4 (Endeca's Complaint in Intervention).  To respond to these counterclaims, and as required by the Patent Local Rule 3-6,[4]  SpeedTrack was required  to specifically identify *every* theory of infringement it intended to argue – including the doctrine of equivalents.

On July 21, 2008, following the issuance of the Court's Claim Construction Order, SpeedTrack served its Final Infringement Contentions.  In them, SpeedTrack asserted that the "category descriptions" required by step "b" of claim 1 and step "c" of claim 20, as that term had been construed by the Court, were present in the accused software, pointing to purely numeric, non-descriptive "dimension value identifiers" or "DVAL_IDs" included in the "walmart-sgmt0.records.binary" file:

```
<DVAL_ID DIMENSION_ID="125875" ID="438119"/>
<DVAL_ID DIMENSION_ID="500579" ID="500580"/>
<DVAL_ID DIMENSION_ID="500000" ID="500590"/>
<DVAL_ID DIMENSION_ID="500000" ID="500620"/>
<DVAL_ID DIMENSION_ID="500691" ID="500695"/>
<DVAL_ID DIMENSION_ID="500698" ID="500702"/>
<DVAL_ID DIMENSION_ID="501059" ID="501062"/>
<DVAL_ID DIMENSION_ID="500568" ID="4292811764"/>
<DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>
<DVAL_ID DIMENSION_ID="500501" ID="4293763268"/>
<DVAL_ID DIMENSION_ID="500957" ID="4293786120"/>
```

*See* Cox Decl., Ex. C, SpeedTrack's Response to Endeca's Interrogatory No. 1, Ex. A at 4-5, 32.

The Patent Local Rules are clear – a party cannot hold back alternative theories of infringement for use another day or time (or as SpeedTrack tries here, in another case).  Indeed, clearly understanding this requirement, SpeedTrack in fact identified the claim limitations for which it alleged alternative infringement arguments under the doctrine of equivalents: i.e., the "displaying" step of claim 11, and step "b" of claim 20.  *See, e.g., id.* at 27 ("Claim 11 is literally

---

[4] The *Walmart* case was filed before the December 1, 2009 revisions to the N.D. Cal. Patent Local Rules took effect.  All citations herein are to the Rules that were in effect prior to December 1, 2009.

DEFENDANTS' NOTICE OF MOTION                                         CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

performed in Wal-Mart's accused method.  In the alternative, the 'displaying' step of claim 11 is performed under the doctrine of equivalents.").

As to the "category descriptions" element (step "b" of claim 1 and step "c" of claim 20), SpeedTrack did not assert any alternative theory under the doctrine of equivalents, and instead alleged only that these limitations were "literally" met in the accused Endeca technology.  *See id.* at 5 ("Claim 1(b) is literally performed in Wal-Mart's accused method.").

### 3.    The Absence of "Category Descriptions" in the Endeca System

After SpeedTrack served its Final Infringement Contentions, on July 6, 2011, Endeca and Walmart moved for summary judgment of non-infringement (*Walmart* Dkt. 322), contending that the accused "category descriptions" in the Endeca system were *purely numeric* identifiers, and therefore were not "information *that includes a name that is descriptive of something about a stored file.*"  *Walmart* Dkt. 355-4, at 12.  Following a November 2011 hearing on Endeca and Walmart's motion, the Court requested that the parties submit further briefing "with respect to the court's prior construction of the term 'category description,'" and in particular, addressing "the distinction between descriptive names and numerical identifiers."  *Walmart* Dkt. 346.  The parties submitted supplemental briefs on December 2, 2011.  *Walmart* Dkt. 348, 351.

SpeedTrack, finally conceding after that hearing that Walmart and Endeca had asserted a compelling non-infringement defense, on December 2, 2011, filed a motion for leave to amend the Final Infringement Contentions which it had served *three years* earlier, asking to add new infringement contentions regarding a new alternative infringement argument – that the accused software infringed under the doctrine of equivalents.  *Walmart* Dkt. 349.

On February 3, 2012, the Court denied SpeedTrack's motion for leave to amend.  In view of  SpeedTrack's obligation to allege infringement under the doctrine of equivalents three years earlier in its Final Infringement Contentions, the Court expressly found that SpeedTrack demonstrated a "lack of diligence in seeking to amend," because it delayed nearly six months after learning that Endeca and Walmart intended to advance their non-infringement defense on this element.  *Walmart* Dkt. 357.  The Court limited SpeedTrack to arguing the infringement

7

DEFENDANTS' NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT

CASE NO. CV 07-3602 PJH

issue as it had presented it to that date.  It would make no sense to have barred SpeedTrack from

raising the argument in the *Walmart* case, while somehow reserving to it the ability to re-raise

the same alternative argument in a separate case involving otherwise identical issues.

### 4.    Endeca and Walmart's Summary Judgment of Non-Infringement

On February 22, 2012, the Court granted Endeca and Walmart's motion for summary

judgment of non-infringement.  *Walmart* Dkt. 358.  The Court rejected SpeedTrack's request,

made in its supplemental briefing on the "category description" issue, that the Court change its

construction of "category description" (a construction that SpeedTrack had proposed).  The

Court confirmed that the term means "information that includes a name that is descriptive of

something about a stored file."  *Id.* at 13.  Then, applying that construction of "category

description" to the Endeca system, the Court found that non-descriptive numbers were not

"alphabetic descriptive names," and that the accused system did not infringe.[5]  *Id.* at 15.

On March 30, 2012, the Court entered Final Judgment in Walmart and Endeca's favor on

all of SpeedTrack's infringement claims, as well as on Walmart's counterclaim for non-

infringement and Endeca's declaratory judgment count of non-infringement.  In particular, the

Court's Final Judgment provided that:

> (1) Endeca does not directly infringe claims 1-4, 7, 11-14, 20, or 21 of the
> '360 Patent by *making, using, offering to sell or selling the Endeca
> Information Access Platform* for the same reasons Walmart was found not
> to infringe the '360 Patent; (2) Endeca does not induce or contribute to
> infringement of claims 1-4, 7, 11-14, 20 or 21 of the '360 Patent *by
> making, using, offering to sell or selling the Endeca Information Access
> Platform*; and (3) Walmart's use of the Endeca Information Access
> Platform does not infringe, directly or indirectly, claims 1-4, 7, 11-14, 20
> or 21 of the '360 Patent.

*Walmart* Dkt. 369 at 3 (emphasis added) (internal citations omitted).

Notably, the Court's Final Judgment says that Endeca does not directly infringe (and does

not induce or contribute to the infringement of the patent), and that Endeca's *customer* using that

---

[5] The Court also denied SpeedTrack's request that the Court find that Endeca and Walmart were
judicially estopped from advancing the non-infringement defense that the entries in the "walmart-
sgmt0.records.binary" file did not contain "category descriptions" as that term was construed by
the Court.  *Walmart* Dkt. 358 at 14-16.

8

1  software does not directly (or indirectly) infringe the patent.  The Order is *not* limited to a

2  judgment that Endeca did not "literally" infringe the asserted claims.  *Non-infringement is non-*

3  *infringement*.  When the Court ruled that Endeca and its customer did not infringe, that finding

4  necessarily encompassed any and all possible infringement arguments that SpeedTrack *might* have

5  had against Endeca and its customers, regardless of whether raised or not raised.

### 5.     SpeedTrack's Appeal to the Federal Circuit

7          SpeedTrack appealed this Court's judgment of non-infringement to the Federal Circuit on

8  March 30, 2012.  *Walmart* Dkt. 370; *see also SpeedTrack*, 524 Fed. App'x at 651.  SpeedTrack

9  argued that the Court's non-infringement finding was based on an erroneous construction of

10  "category description."  *See SpeedTrack,* 524 Fed. App'x at 653-658.  SpeedTrack also appealed

11  two other decisions by the Court: (a) the Court's Order denying SpeedTrack leave to amend its

12  infringement contentions to assert the doctrine of equivalents, and (b) the Court's denial of

13  SpeedTrack's request that Endeca and Walmart be judicially estopped from advancing the non-

14  infringement defense based on the absence of "category descriptions."[6]

15          On April 16, 2013, the Federal Circuit issued a decision affirming each of this Court's

16  rulings.  *Id.* at 660.  First, the Federal Circuit affirmed this Court's construction of "category

17  description," and provided further clarity on that construction:

18              "[C]ategory description" means: "information that includes a name that is
             descriptive of something about a stored file."  *"Name," as used in the*
19           *claim language, requires "information" that must include, but is not*
             *limited to, **a description in alphabetic form**.*
20
21  *Id.* at 657 (emphasis added).  Second, the Federal Circuit affirmed the Court's granting of

    summary judgment of non-infringement, holding that:
22
23              [I]t was Speedtrack's burden to demonstrate that the "walmart-sgmt0.
             records.binary" file in Endeca's accused system contains entries that are
24           comprised of alphabetic descriptive names, if it was to prove that Endeca's
             accused system infringes.  *Because it is undisputed that these entries*
             *consist only of a series of numerical identifiers, Endeca is entitled to*
25           *summary judgment of noninfringement as a matter of law.*

26

27  ─────────────────
    [6] Endeca and Walmart cross-appealed the Court's decision granting SpeedTrack's motion for
28  summary judgment of no invalidity.  The cross-appeal is not relevant to this motion.

DEFENDANTS' NOTICE OF MOTION                                    CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

1   *Id.* (emphasis added).

2       Third, the Federal Circuit held that the Court did not abuse its discretion when it rejected

3   SpeedTrack's request that it apply the doctrine of judicial estoppel to preclude Walmart and

4   Endeca from asserting the non-infringement defense that "category descriptions" cannot consist

5   solely of numeric identifiers. *Id.* at 657-659.

6       Finally, the Federal Circuit affirmed the Court's decision denying SpeedTrack's motion

7   to amend its infringement contentions to include a doctrine of equivalents argument. *Id.* at 659.

8       **B.      The Present Case against Additional Endeca Customers**

9       SpeedTrack filed the present case, originally charging six additional Endeca customers

10  with infringement of the same '360 patent, back in 2007, approximately seven months after filing

11  the *Walmart* case. *See* Dkt. 1. In view of the *Walmart* case, on August 27, 2007, the Endeca

12  customers moved to stay this case pending the outcome of the *Walmart* case. *See* Dkt. 8.

13      On October 10, 2007, following a hearing on the motion to stay, the Court entered an

14  Order staying this case until the "final resolution" of the *Walmart* case. *See* Dkt. 37. Following

15  the Federal Circuit's decision in the *Walmart* case, the Court lifted the stay on May 13, 2013.

16  *See* Dkt. 55. The Endeca customers then expected SpeedTrack to dismiss this case because they

17  were using the same Endeca technology that was found to be non-infringing.

18      Instead, on June 28, 2013, SpeedTrack filed a First Amended and Supplemental

19  Complaint. *See* Dkt. 61. Remarkably, the Amended Complaint alleges that the Endeca

20  customers[7] *willfully* infringe the '360 patent based on their use of the now non-infringing

21  "Endeca Information Access Platform." *See id.*

22      On August 2, 2013, the Endeca customers moved to dismiss the Amended Complaint on

23  preclusion grounds. *See* Dkt. 70. After taking discovery related to the motion to dismiss,

24  including document productions and depositions of each customer, SpeedTrack filed its

25  opposition to the motion on September 26, 2013. *See* Dkt. 84. On November 7, 2013, following

26

27  _____
    [7] Defendants Circuit City Stores, Inc. and CompUSA, Inc. were dismissed from the case
    by stipulation on June 5, 2013 because they are no longer in business. *See Dkt.* 56.
28

10

the hearing on the customers' motion to dismiss, the Court (a) provided SpeedTrack the

opportunity to take additional customer depositions relating to the extent to which Endeca has

indemnified the customers who are parties here;[8] and (b) allowed the Defendants to move for

summary judgment under Fed. R. Civ. P. 56 when that discovery was complete.  *See* Dkt. 94.

## III.    THERE ARE NO GENUINE ISSUES OF MATERIAL FACT

### A.    Standard for Summary Judgment Under Federal Rule of Civil Procedure 56

Summary judgment is generally appropriate when the evidence shows there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment."  *Id.* at 248.  "[W]hile the materiality determination rests on the

substantive law, it is the substantive law's identification of which facts are critical and which

facts are irrelevant that governs."  *Id.*

### B.    SpeedTrack Cannot Dispute that the Endeca Software Used by Each Endeca Customer Here Functions Identically to the Endeca Software Found Not To Infringe in the *Walmart* Case

The fundamental, undisputed (and dispositive) facts here are:

(1) the Endeca Information Access Platform was previously determined not to infringe

the '360 patent because the Endeca software uses numeric, non-descriptive identifiers, rather

than alphabetic descriptive names, and therefore does not meet the "category description"

limitation of the asserted independent claims; and

(2) here, just as in the *Walmart* case, each Endeca customer's implementation of the

Endeca product uses numeric, non-descriptive identifiers, rather than alphabetic descriptive

names.

SpeedTrack does not dispute the first point.  Rather, it *admits* in paragraphs 12-14 of the

operative Amended Complaint that the "Endeca Information Access Platform" was adjudicated

not to infringe the '360 patent in the *Walmart* case.  Dkt. 61 at ¶¶ 12-14.

---

[8] SpeedTrack represented that these depositions were the only additional discovery it
needed to oppose this motion for summary judgment.  *See*, Cox Decl., Ex. B at 24:3-22.

DEFENDANTS' NOTICE OF MOTION                                    CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

As to the second point, SpeedTrack does not challenge that each Endeca customer's implementation of the Endeca product uses numeric, non-descriptive identifiers, rather than alphabetic descriptive names, for the same "category description" elements alleged in the *Walmart* case.  Specifically, in the *Walmart* case, SpeedTrack argued that the "category descriptions" in the accused system were in the "walmart-sgmt0.records.binary" file, and pointed in particular to the "dimension value identifier" or "DVAL_ID" entries in that file:



(*See* Memorandum in Support of Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,544,360, *Walmart* Dkt. 322 at 16; *see also*, Cox Decl., Ex. C, SpeedTrack's Response to Endeca's Interrogatory No. 1, Ex. A at 4-5, 32.)

As shown by affidavits from each of the Endeca customers submitted herewith, the Endeca product they each use has an equivalent "records.binary" file for their web-site (for example, CDW's system has "cdw-sgmt0.records.binary"), none of the customers change the format of the numeric fields in the files, and each "records.binary" file includes entries that are materially identical to the entries that were at issue in the *Walmart* case – they each use non-descriptive, numeric identifiers:

- CDW's "cdw-sgmt0.records.binary" file (in human readable form) includes the following entries:[9]

```
<DVAL_ID DIMENSION_ID="5000" ID="5001"/>
<DVAL_ID DIMENSION_ID="6000" ID="6001"/>
<DVAL_ID DIMENSION_ID="100000" ID="100001"/>
```

- Newegg's "newegg-sgmt0.records.binary" file (in human readable form) includes the following entries:[10]

```
<DVAL_ID DIMENSION_ID="4000" ID="4001"/>
<DVAL_ID DIMENSION_ID="4015" ID="4018"/>
<DVAL_ID DIMENSION_ID="4800" ID="4812"/>
```

[9] *See* Cox Decl., Ex. D, Decl. of Aric Lazar (CDW); *see also* Cox Decl., at ¶ 6 and Ex. E.

[10] *See* Cox Decl., Ex. F, Decl. of Robert Wang (Newegg); *see also* Cox Decl., at ¶ 8 and Ex. G.

12

- Office Depot's "od_us-sgmt0.records.binary" file (in human readable form) includes the following entries:[11]

```
<DVAL_ID DIMENSION_ID="1" ID="2"/>
<DVAL_ID DIMENSION_ID="100" ID="2930"/>
<DVAL_ID DIMENSION_ID="100" ID="3120"/>
```

- PC Connection's "pcweb-sgmt0.records.binary" file (in human readable form) includes the following entries:[12]

```
<DVAL_ID DIMENSION_ID="1" ID="2"/>
<DVAL_ID DIMENSION_ID="19" ID="20"/>
<DVAL_ID DIMENSION_ID="19" ID="21"/>
```

SpeedTrack's only argument here seems to be that each customer's use of the software is "unique," because each Endeca customer gives its own unique set of numbers to its own inventory, on its own website.  But, SpeedTrack makes no allegation, and can point to no evidence, that any of these customer's use of the "Endeca Information Access Platform" is different in any *material* way from the "Endeca Information Access Platform" that was found not to infringe.  SpeedTrack also makes some argument that each customer uses a different "version number" of the Endeca software than Walmart did, but the *Walmart* case was not limited to any particular version number, and indeed, the judgment entered for Endeca in the *Walmart* case encompassed *all* versions of the Endeca software, up to the time of judgment.  And again, other than the version "number" itself, SpeedTrack points to no *material* difference in the versions, as they relate to the patent allegations.  There simply is no genuine issue of material fact, that the Endeca system, as implemented by each customer, uses purely numeric identifiers, which is what the software is designed for and is *precisely how Walmart implemented it*.

C.     **SpeedTrack Cannot Dispute the Facts Showing The Relationship Between Endeca and the Customers Here**

Finally, each defendant in this case is a licensee of Endeca, just as Walmart was, and SpeedTrack's infringement allegations focus solely on each customer's use of the Endeca

---

[11] *See* Cox Decl., Ex. H, Decl. of Ancin Peter (Office Depot); *see also* Cox Decl., at ¶ 10 and Ex. I.

[12] *See* Cox Decl., Ex. J, Decl. of Stephen C. Young (PC Connection); *see also* Cox Decl., at ¶ 12 and Ex. K.

13

1    product.  Indeed, SpeedTrack's Amended Complaint here accuses – *by name* – the "*Endeca*

2    *Information Access Platform*"[13] as the infringing technology.  Dkt. 61 (emphasis added).

3           Each Endeca customer has a license agreement with Endeca for use of the Endeca

4    software, and each has an agreement with Endeca providing that Endeca will "indemnify,

5    defend, and hold harmless" the customer for any loss arising out of any third party claim that the

6    Endeca software "infringe[s] on the Intellectual Property Rights of any third party… ."  (*See* Cox

7    Decl., Ex. L at §§ 9.1-9.7 (CDW); Ex. M at §§ 9.1-9.6 (Newegg); Ex. N at §§ 9.1-9.6 (Office

8    Depot); Ex. O at §§ 9.1-9.7 (PC Connection).)  Pursuant to those agreements, Endeca is and has

9    been responsible for the defense of each of its customers in this proceeding.

10          While *Endeca* has not formally intervened in *this* case, Defendants are "privies" to

11   Endeca, having acquired Endeca's non-infringing technology from Endeca and having been sued

12   for infringement based on their use of that technology.  Endeca and its customers agreed to stay

13   this case back in 2007, in view of the *Walmart* case, recognizing that whatever outcome was

14   reached in that case, would have an impact here.  *See, e.g.,* Dkt. 8 at 4 ("The Wal-Mart case will

15   resolve the same legal and factual questions at issue here relating to the validity of the '360

16   Patent and whether Endeca's technology infringes the patent.").

17          Accordingly, there is no material dispute that there is an "identity of parties or their

18   privies" between the *Walmart* case and this case.  *See, e.g., Global Maintech Corp. v. AIG*

19   *Techs., Inc.*, 2006 WL 354224, at *3-6 (D. Minn. Feb. 15, 2006) (finding privity where software

20   technology provider was contractually obligated to defend customer/user, and precluding suit

21   alleging infringement due to use of technology previously found not to infringe on *res judicata*

22   grounds).

23

24

25

26

27   [13] As described below in section IV.A, under the *Kessler* doctrine, the *Walmart* decision
     established for Endeca a right to have its Information Access Platform, which this Court found,
28   and the Federal Circuit affirmed, to be non-infringing, freely bought and sold without restraint or
     interference.  *See, e.g., MGA, Inc.*, 827 F.2d 729, 734.

14

1

2

**IV.**     **SPEEDTRACK IS BARRED BY *RES JUDICATA* FROM RE-LITIGATING ITS INFRINGEMENT CLAIMS AGAINST ENDECA'S CUSTOMERS**

3

*Res judicata*, or claim preclusion, provides that "when a court of competent jurisdiction

4

has entered a final judgment on the merits of a cause of action, the parties to the suit and their

5

privies are thereafter bound 'not only as to every matter which was offered and received to

6

sustain or defeat the claim or demand, *but as to any other admissible matter which might have*

7

*been offered for that purpose*.'" *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir.

8

2008) (emphasis added) (quoting *Comm'r of Internal Revenue. v. Sunnen*, 333 U.S. 591, 597

9

(1948)).

10

The doctrine of *res judicata* "embod[ies] the public policy of putting an end to litigation."

11

*Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 475-76 (Fed. Cir. 1991).  Accordingly, claim

12

preclusion applies where the following elements are met:  (a) there is an identity of parties or

13

their privies, (b) there was an earlier final judgment on the merits, and (c) the new claim is based

14

on the same set of transactional facts as the first.  *See Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d

15

1360, 1362-63 (Fed. Cir. 2000).  Here, each of these elements is met.

16

17

    **A.**     **SpeedTrack is Barred by the *Kessler* Doctrine from Litigating Infringement Actions Against the Endeca Customers for Their Use of Endeca's Non-Infringing Product**

18

The Supreme Court has held that in patent cases, the privity element is satisfied simply

19

by a customer's use of the *product* at issue.  *Kessler v. Eldred*, 206 U.S. 285 (1907), (the

20

"*Kessler* doctrine"); *see also, Tech. Licensing Corp. v. Thomson, Inc.*, 738 F. Supp. 2d 1096,

21

1101 (E.D. Cal. 2010) ("The *Kessler* doctrine appears to be nothing more than a patent-specific

22

application of *res judicata* between manufacturers of allegedly infringing products and their

23

customers in patent infringement suits against the customer.").  Under the *Kessler* doctrine, the

24

manufacturer of a product that has been found to be non-infringing secures a limited trade right,

25

attached to the product, "to have that which [a court has determined] it lawfully produces freely

26

bought and sold without restraint or interference."  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d

27

28

15

1    729, 734 (Fed. Cir. 1987), quoting *Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*, 232

2    U.S. 413 (1914).

3         The *Kessler* doctrine is no old and antiquated rule.  The Federal Circuit follows it, noting

4    that it "bars a patent infringement action against a customer of a seller who has previously

5    prevailed against the patentee because of … noninfringement of the patent; otherwise, the effect

6    of the prior judgment would be virtually destroyed." *Id.* at 734.  Indeed, the doctrine was

7    recently recognized in this district.  *Shoom, Inc. v. Elec. Imaging Sys. of Am., Inc.*, No. C 07-

8    05612 JSW, 2011 WL 4595212, at *3 (N.D. Cal. Oct. 4, 2011) (recognizing applicability of

9    *Kessler* doctrine to infringement claim against customer of seller who prevailed in prior

10   infringement action, stating that "[t]he *Kessler* doctrine also affords a party's customers a

11   measure of certainty that their decision to purchase or use a product will not be met with

12   litigation").

13        In *Kessler*, the patent owner, Eldred, sued Kessler for infringement of a patent related to a

14   cigarette lighter.  206 U.S. at 285, 287–88.  After Kessler prevailed in that suit, Eldred then sued

15   one of Kessler's customers for infringing the same patent, and Kessler assumed the defense of

16   that lawsuit.  *Id.* at 286, 288.  To protect its customers, Kessler filed suit against Eldred and

17   obtained an injunction barring Eldred from filing any additional lawsuits for infringement based

18   on the "purchase, use, or sale" of any lighter manufactured by Kessler.  *Id.* at 286.  The Supreme

19   Court upheld the injunction on the basis that if Eldred were able to continue to file suits accusing

20   products that did not infringe, "the result will be practically to destroy Kessler's judgment right."

21   *Id.* at 290.

22        Under *Kessler*, when this Court determined that the Endeca Information Access Platform

23   – the same technology accused here – did not infringe the '360 patent, that *product* gained the

24   status of a "noninfringement" and SpeedTrack became barred from bringing an infringement

25   action against Endeca's customers based on their use of the same, or materially the same, non-

26   infringing Endeca product.  When *Endeca* prevailed in the *Walmart* action, it earned the right to

27   freely manufacture and sell its non-infringing technology without interference from SpeedTrack.

28

DEFENDANTS' NOTICE OF MOTION                                   CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

1

### B.     There Is Identity of Parties (or their Privies)

2      Even though *Kessler* is a compelling rule that says it is the identity of the *product* that

3 matters in patent cases, and that *res judicata* does not require any written contract between the

4 manufacturer and its customer for identity of the parties, *in this case*, the customers are clearly in

5 privity with Endeca.  In *Taylor v. Sturgell*, the Supreme Court identified six categories of

6 circumstances where nonparty claim preclusion applies.  553 U.S. 880, 893-895 (2008).  At least

7 two of the *Taylor* categories are applicable here: (1) "a nonparty may be bound by a judgment

8 because she was adequately represented by someone with the same interests who was a party to

9 the suit;" and (2) "nonparty preclusion may be justified based on a variety of pre-existing

10 substantive legal relationships between the person to be bound and a party to the judgment."  *Id.*

11 at 894 (internal citations and quotations removed).

12      *Kessler* aside, there can be no dispute that the privity element of *res judicata* is met.

13 Clearly Endeca's interests in the *Walmart* case in defending its product against claims of

14 infringement were adequately aligned with the interests of the Endeca customers here as

15 licensees defending against claims of infringement of the same patent for their use of the same

16 Endeca product previously found not to infringe.  More importantly, *SpeedTrack* was a *party* to

17 the *Walmart* case and had the *opportunity* to fully litigate its claims that the Endeca product

18 infringes the '360 patent, literally or under the doctrine of equivalents.

19      Tellingly, while SpeedTrack *now* takes issue with whether there is privity here, until the

20 motion to dismiss was filed in response to its Amended Complaint, SpeedTrack contended that

21 the Endeca customers here *were* in privity with Endeca, based at least in part on the fact that

22 Endeca has agreed to indemnify each of them.  (*See* Dkt. 59 at 7 ("[T]he indemnification facts,

23 once disclosed, will demonstrate that Endeca adequately and fully represented Defendants'

24 interests in the earlier claim construction proceedings and that this Court's prior rulings,

25 modified by the Federal Circuit's pronouncements on appeal, will apply."); *id.* at 3 ("It is also

26 SpeedTrack's current understanding (not yet confirmed by discovery) that all four of these

27 defendants were and have been fully indemnified by Endeca."); *id.* at 16 ("As currently

28 understood by SpeedTrack (prior to discovery), each Defendant has been and is currently being

17

1    indemnified by Endeca."); *id.* at 8 ("SpeedTrack may file a motion seeking a ruling that

2    Defendants are in privity with Endeca and therefore collateral estoppel applies to the Court's

3    claim constructions and its grant of partial summary judgment on Defendants' Section 102(a)

4    and 102(b) defenses in the Walmart.com Action.").)

5          SpeedTrack's prior "understanding" has now been confirmed by discovery.

6    **C.    SpeedTrack Does Not Dispute that this Court Entered an Earlier**
            **Judgment on the Merits**

7

8          There is no dispute that there was an "earlier final judgment on the merits" in the

9    *Walmart* case.  *See, e.g.,* Dkt. 61 (Amended Complaint) at ¶ 14.  That Final Judgment was not

10   only based on SpeedTrack's claim against Endeca's customer, but Endeca's complaint in

11   intervention against SpeedTrack, seeking a declaration that its products did not infringe under

12   *any* theory SpeedTrack might have raised.

13   **D.    SpeedTrack's Allegations Are Based on the Same Set of Transactional**
            **Facts as the *Walmart* Case**

14

15         In patent infringement cases, the "same set of transactional facts" element focuses on the

16   "structure of the device or devices in issue."  *Acumed*, 525 F.3d at 1324.  For claim preclusion to

17   apply, the accused product in the second suit must be "essentially the same" as the accused

18   product in the first suit.  *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009); *see*

19   *also Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)

20   ("[W]here the alleged infringer prevails, the accused devices have the status of noninfringements

21   …").  The analysis of whether the two products are "essentially the same" does not focus on

22   every conceivable difference between the products.  Rather, it focuses on whether the product in

23   the second case "remains unchanged with respect to the corresponding claim limitations at issue

24   in the first suit."  *Nystrom*, 580 F.3d at 1285-86 (holding that plaintiff's infringement claims in

25   second suit were barred by *res judicata* because products in second suit had undergone merely

26   "colorable" changes that were unrelated to the non-infringement ruling in the first case).

27         Here, the material transactional facts regarding alleged infringement of the '360 patent

28   through each customer's use of the Endeca product are the same as in the *Walmart* case.  The

                                                          18

First Amended Complaint specifically alleges that the "Endeca Information Access Platform"
was accused of infringement in the *Walmart* case, and was finally adjudicated not to infringe.
Dkt. 61 ¶¶ 12-14.  The First Amended Complaint also alleges that each Defendant here infringes
the '360 patent based solely on its use of the "Endeca Information Access Platform."  *Id.* ¶¶ 17-
19, 32-34, 47-49, and 62-64.  No modified or different product is identified in the Amended
Complaint, nor is there any allegation that the accused Endeca technology here is different in any
material way from the Endeca technology accused in the *Walmart* case.  Although the Endeca
customers may use different version numbers of the Endeca product with different websites and
different product inventories, there are no *material* differences, with regard to the relevant
"category description" claim limitations.  Here, there is no question that the Endeca customers
use the same Endeca software that was accused in the prior case, in materially the same manner
that was found not to infringe, resulting in non-descriptive, numeric "dimension value
identifiers" or "DVAL_IDs."  Product records generated by the Endeca software, as used by each
customer here, and cited by SpeedTrack in support of its opposition to the customers' earlier
motion to dismiss, clearly illustrate the point:



Dkt. 84-10 at 8. (PC Connection)

Dkt. 84-11 at 11.  (Newegg)

Dkt. 84-12 at 4. (Office Depot)

Dkt. 84-13 at 3.  (CDW)

    There can be no genuine dispute that the *material* transactional facts with respect to the
relevant "category description" claim limitations of the asserted patent are *identical* to those in
the *Walmart* action.

19

DEFENDANTS' NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT

CASE NO. CV 07-3602 PJH

1

2

### E.   SpeedTrack Cannot Avoid *Res Judicata* by Now Focusing on Infringement Under the Doctrine of Equivalents

3

*Res judicata* applies not only to "every matter which was offered and received to sustain

4

or defeat the claim or demand," but also to "any other admissible matter **which might have been**

5

**offered for that purpose**."  *Acumed*, 525 F.3d at 1323 (emphasis added).  Of course, a party

6

cannot avoid the effects of *res judicata* by "splitting" a claim or cause of action into separate

7

grounds of recovery, and then raising the separate grounds in successive lawsuits, as SpeedTrack

attempts here.

8

Infringement under the doctrine of equivalents is not a distinct cause of action.  The cause

9

of action is "infringement."  The doctrine of equivalents is an infringement *argument* that is

10

typically raised when a patentee recognizes there is serious doubt as to *literal* infringement – but

11

the "doctrine of equivalents" infringement claim arises out of the same "nucleus of facts" as the

12

literal infringement claim (*i.e.*, the same claim limitations are asserted against the same features

13

of the accused products).  *See, e.g.,Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520

14

U.S. 17, 21 (1997) ("Under [the doctrine of equivalents], a product or process that does not

15

literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if

16

there is 'equivalence' between *the elements of the accused product or process and the claimed*

17

*elements of the patented invention*.") (emphasis added).

18

Indeed, the Federal Circuit's long-recognized "two-step" infringement analysis

19

underscores this point.  "The determination of infringement is a two-step process, wherein the

20

court first construes the claims and then determines whether *every claim limitation, or its*

21

*equivalent, is found in the accused device*."  *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372,

22

1377 (Fed. Cir. 2008) (emphasis added).  Infringement, regardless of the arguments advanced by

23

the patent owner, is determined under chapter 35 U.S.C. § 271 – and once a court rules that there

24

is no infringement, there is no separate statue, and no separate cause of action, for alleging

25

infringement under the doctrine of equivalents.

26

A party must raise in *one* lawsuit "*all the grounds of recovery arising from a single*

27

*transaction or series of transactions that can be brought together*."  *Mars Inc. v. Nippon Conlux*

28

20

1   *Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (emphasis added).  While *res judicata* may

2   not bar "distinct causes of action" that were not asserted in the prior case, it bars the assertion of

3   "*legal theories arising out of the same transactional nucleus of facts*" as the prior case.  *Acumed,*

4   525 F.3d at 1326 (emphasis added).  Indeed, as the Federal Circuit made clear in *Acumed LLC v.*

5   *Stryker Corp*, "'claims that were raised or could have been raised,' refers to legal theories arising

6   out of the same transactional nucleus of facts, rather than to distinct causes of action."  *Id.*

7      Because the accused product here is materially identical to that in the *Walmart* case, and

8   the patent law issues are identical, SpeedTrack can no more raise a new argument of

9   infringement now (such as alleging infringement under the doctrine of equivalents), than a party

10  that lost on a patent invalidity claim in view of prior art reference A, could file a new lawsuit

11  seeking a declaration of invalidity using a new prior art reference B.  When a party loses on a

12  claim, it loses – a regardless of whether there were other arguments it could have made in

13  support of that claim.

14      SpeedTrack was *required* by the Patent Local Rules to have asserted in its Final

15  Infringement Contentions in the *Walmart* case the doctrine of equivalents arguments it raises

16  here.  Because the doctrine of equivalents is merely an alternative argument for infringement

17  arising out of the same nucleus of facts as "literal" infringement, and is not a distinct cause of

18  action, even if SpeedTrack had never filed its motion in the *Walmart* case seeking to add a late

19  doctrine of equivalents argument, SpeedTrack would be barred by *res judicata* from raising that

20  argument now.  S*ee Vigil v. Walt Disney Co.*, No. C-02-4002 MHP, 2003 WL 22016805 (N.D.

21  Cal. Jul. 31, 2003), at *4 (rejecting plaintiff's attempt to bring new infringement suit against

22  same defendant under doctrine of equivalents alone because "res judicata precludes relitigation

23  of all grounds of recovery that were asserted or *could have been asserted* in a previous action

24  between the same parties") (citations omitted) (emphasis added).  SpeedTrack cannot use the fact

25  that it *tried* to assert infringement under the doctrine of equivalents to justify basing an entire

26  new case on that argument.  The Court found SpeedTrack to have done so too late in the

27  *Walmart* case – and that *binds* it to the final decision entered in the *Walmart* case.

28

1      The fact that SpeedTrack chose not to raise its doctrine of equivalents argument in its Final

2   Infringement Contentions, and then proceeded to wait *three years* before seeking leave to amend

3   its contentions to add that infringement theory (and inexplicably waited six months after becoming

4   aware of Endeca and Walmart's additional non-infringement defense based on the "category

5   description" limitation) changes nothing.  SpeedTrack made a decision, after it became aware of

6   Endeca and Walmart's "category description" non-infringement defense, to request that the Court

7   "estop Endeca and Walmart.com from even asserting this [non-infringement] contention under the

8   doctrine of judicial estoppel," rather than move to amend its contentions.  *Walmart* Dkt. 349, at 8.

9   As the Federal Circuit noted in *Nystrom v. Trex Co., Inc.*, the fact that a party's "tactical

10   decisions" did not pay off does not create an end-around to *res judicata*.  580 F.3d at 1286.

11      Simply put, SpeedTrack asserts here the same cause of action against the same Endeca

12   product, used materially in the same way by the Endeca customers here, as was found not to

13   infringe in the *Walmart* case.  *Res judicata* clearly applies and summary judgment that

14   SpeedTrack is barred from asserting infringement against these customers is appropriate.

15   **V.    COLLATERAL ESTOPPEL BARS SPEEDTRACK FROM RE-
16         LITIGATING THE ISSUE OF WHETHER THE ENDECA CUSTOMERS'
          USE OF THE NON-INFRINGING ENDECA PRODUCT INFRINGES THE
17         '360 PATENT**

18      Collateral estoppel, or issue preclusion, protects defendants from having to litigate issues

19   that already have been fully and fairly litigated in a previous action.  *Pharmacia & Upjohn Co. v.*

20   *Mylan Pharma., Inc.*, 170 F.3d 1373, 1379 (Fed Cir. 1999).  Collateral estoppel serves to

21   "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

22   preventing inconsistent decisions, encourage reliance on adjudication."  *Allen v. McCurry*, 449

23   U.S. 90, 94 (1980).

24      Under Ninth Circuit law, collateral estoppel applies where: (1) the issue necessarily

25   decided at the previous proceeding is identical to the one which is sought to be re-litigated; (2)

26   the first proceeding ended with a final judgment on the merits; and (3) the party against whom

27   collateral estoppel is asserted was a party or in privity with a party in the first proceeding.

28   *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).  Here, the second and third

22

1    elements warrant little discussion, as there is no dispute (as to the second element) that the

2    *Walmart* case ended with a final judgment on the merits following the Court's granting of

3    summary judgment of non-infringement, or (as to the third element) that SpeedTrack was a party

4    in the *Walmart* case.

5          A.    **The Issue of Infringement Was Fully and Fairly Litigated in the**

6                ***Walmart* Case and SpeedTrack Cannot Re-Litigate that Issue Now by**
                **Advancing a New Infringement Argument**

7          The first collateral estoppel element – whether the issue necessarily decided at the

8    previous proceeding is identical to the one sought to be re-litigated – is also met.  Where the

9    issue sought to be re-litigated is particular to patent law, Federal Circuit law applies.  *See Aspex*

10   *Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (citations omitted).

11   The determination of infringement "is a two-step process, wherein the court first construes the

12   claims and then determines whether every claim limitation, or its equivalent, is found in the

13   accused device."  *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008).

14         It is well established that collateral estoppel bars a plaintiff from re-litigating the issue of

15   infringement in a second action against a product that was previously adjudicated to be non-

16   infringing – which is precisely what SpeedTrack is attempting to do here.  "[C]ollateral estoppel

17   in a patent case prevents a plaintiff who previously litigated a claim that certain technology

18   infringed its patent (and lost) from taking 'another bite at the apple' by again asserting that the

19   same technology infringes the same patent."  *Reese v. Verizon California, Inc.*, No. 2012-1048,

20   2012 WL 6634227, *2 (Fed. Cir. 2012) (citing *Transocean Offshore Deepwater Drilling, Inc. v.*

21   *Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1312 (Fed. Cir. 2010)); *see also Vigil*, 2003 WL

22   22016805, at *5 ("Issue preclusion plainly bars a plaintiff from relitigating . . . a claim of

23   infringement over the very items which were found non-infringing in [a prior action].").[14]

24

25   _____

     [14] While the accused products in the second case need *not* be exactly identical to those in the
26   previous case for collateral estoppel to apply, that inquiry is unnecessary here, because
     SpeedTrack's Amended Complaint accuses the same "Endeca Information Access Platform" that
27   SpeedTrack accused in the *Walmart* case and because the Endeca product used by each defendant
     here is materially identical to that at issue in the *Walmart* case.  *See, e.g.*, *Home Diagnostics, Inc.*
28   *v. Lifescan, Inc.*, 120 F. Supp. 2d 864, 868 (N.D. Cal. 2000) ("If a structure in a product is found
     to be identical to a structure in an otherwise different, previously litigated product, the judgment

                                         23

1          Moreover, SpeedTrack is wrong to assert that infringement under the doctrine of

2   equivalents should not be barred by collateral estoppel.  Federal courts have determined that, for

3   issue preclusion in patent cases, the "issue" to be given preclusive effect is the determination of

4   an entire, ultimate issue such as infringement or invalidity.  An attempt to raise new, individual

5   arguments that may not have been presented for or against the determination of such an ultimate

6   "issue" cannot avoid the preclusive effect of that earlier determination.  "[O]nce an issue is

7   raised and determined, it is the entire *issue* that is precluded, not just the particular arguments

8   raised in support of it in the first case."  *Applied Med. Res. Corp.* 352 F. Supp. 2d at 1125; *see*

9   *also, Dana v. E.S. Originals, Inc.,* 342 F.3d 1320, 1325 (Fed. Cir. 2003) (characterizing both

10  validity and infringement as ultimate issues to be given preclusive effect under collateral

11  estoppel); *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994-995 (N.D. Cal. 2007)

12  (distinguishing, for the purpose of issue preclusion, between an ultimate "issue" and the "specific

13  grounds" asserted to support determination of that issue); *Zip Dee, Inc. v. Dometic Corp.,* 905 F.

14  Supp. 535, 537 (emphasizing the difference "between an *issue*, in the sense employed by the

15  Restatement [(Second) of Judgments] and by preclusion doctrine generally, and the *arguments*

16  that a party may advance in its effort to prevail on such an issue").

17         In the *Walmart* action, SpeedTrack had the full *opportunity* to litigate the issue of

18  *infringement* and present evidence to support its allegation that the Endeca system included

19  infringing "category description" elements under the doctrine of equivalents.  SpeedTrack chose,

20  instead, to contend only that they were *literally* present, and the Court's final judgment was clear

21  that Endeca's customer's use of Endeca software does not infringe because it does not meet the

22  "category description" limitation of the asserted claims.  (*See* Final Judgment; *Walmart* Dkt. 369

23  at 3.)  SpeedTrack cannot now relitigate the issue of infringement, by saying that the missing

24

25

26

27  _____

    as to whether that structure meets the relevant claim element must apply to the later litigation to

28  avoid repetitive litigation of the same issues.").

                                                    24

DEFENDANTS' NOTICE OF MOTION                                          CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT

1   element was in fact present under the doctrine of equivalents.[15]  Nor can SpeedTrack avoid

2   preclusion by asserting claim 22 of the '360 patent.[16]

3       Every independent claim of the '360 patent requires the "category description" limitation

4   that proved to be dispositive in the *Walmart* case.  SpeedTrack does not dispute that the

5   construction of "category description" was litigated and stands settled.  Nor can SpeedTrack

6   genuinely dispute that the "DVAL_IDs" used by the Endeca software are always numeric

7   identifiers.  Accordingly, SpeedTrack's is barred from relitigating the issue of infringement

8   through the customers' use of the Endeca software, and summary judgment is appropriate.

9   **VI.   CONCLUSION**

10      For the reasons stated above, CDW Corporation, Newegg Inc., Office Depot, Inc., and

11  PC Connection respectfully request that the Court enter summary judgment that SpeedTrack's

12  infringement claims are barred.

13

14  Dated: December 18, 2013             Respectfully Submitted,

15                                      */s/ Brendan S. Cox*
                                        Lary Alan Rappaport (SBN 087614)
16                                      Joshua J. Pollack (SBN 215922)
                                        PROSKAUER ROSE LLP
17                                      2049 Century Park East, Suite 3200
                                        Los Angeles, CA 90067-3206
18

19  _____
    [15] Even assuming SpeedTrack could relitigate infringement under the doctrine of equivalents,
20  SpeedTrack's argument is futile.  First, it cannot be said that a non-descriptive number is
    "equivalent" to an alphabetic descriptive name.  To say otherwise would be logical nonsense and
21  would improperly vitiate the required "category description" element of the asserted claims.  *See,
    e.g., Kruse Tech. P'ship v. Volkswagen AG*, No. 2012-1352, 2013 WL 5526526 at *11 (Fed. Cir.
22  Oct. 8, 2013).  In addition, SpeedTrack is barred from making the argument here, because the
    patentees added a narrowing limitation during prosecution to expressly require that each category
23  description comprise a descriptive name and SpeedTrack cannot use the doctrine of equivalents
    to recover surrendered subject matter.  *See, e.g., Lucent Technologies, Inc. v. Gateway, Inc*. 525
24  F.3d 1200, 1218 (Fed. Cir. 2008) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722, 740 (U.S. 2002) ("Narrowing the claims in response to a rejection during
25  prosecution creates a presumption that the applicant surrendered the territory between the
    original claims and the amended claims.")

26  [16] Where a particular claim construction was "determinative" of non-infringement in a
    first case, and where the accused products in the two cases are "materially identical,"
27  collateral estoppel applies to *every* claim containing that "determinative" claim limitation
    – even claims that were not asserted in the previous case.  *Aspex Eyewear, Inv. V. Zenni*
28  *Optical, Inc.*, 713 F.3d at 1381-82 (Fed. Cir. 2013).

25

1

Telephone: (310) 557-2900
Facsimile: (310) 557-2193
lrappaport@proskauer.com
jpollack@proskauer.com

2

3

Steven M. Bauer (Admitted *Pro Hac Vice*)
Colin G. Cabral (Admitted *Pro Hac Vice*)
Joel Cavanaugh (Admitted *Pro Hac Vice*)
Brendan S. Cox (Admitted *Pro Hac Vice*)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
sbauer@proskauer.com
ccabral@proskauer.com
jcavanaugh@proskauer.com
bcox@proskauer.com

4

5

6

7

8

9

10

11

*Attorneys for Defendants*
*Office Depot, Inc., CDW Corp.,*
*Newegg Inc., and PC Connection, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT

CASE NO. CV 07-3602 PJH

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that a true and correct copy of the above and

3

foregoing document has been served on December 18, 2013 to all counsel of record who

4

are deemed to have consented to electronic service via the Court's CM/ECF system. Any

5

other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or

6

overnight delivery.

7

8

*/s/  Brendan S. Cox*
Brendan S. Cox

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION                          CASE NO. CV 07-3602 PJH
AND MOTION FOR SUMMARY JUDGMENT