1  **MCKOOL SMITH HENNIGAN, P.C.**
2  **RODERICK G. DORMAN (SBN 96908)**
   rdorman@mckoolsmithhennigan.com
3  **ALAN P. BLOCK (SBN 143783)**
   ablock@mckoolsmithhennigan.com
4  **MARC MORRIS (SBN 183728)**
   mmorris@mckoolsmithhennigan.com
5  **865 South Figueroa Street, Suite 2900**
   **Los Angeles, California 90017**
6  **Telephone: (213) 694-1200**
   **Facsimile:  (213) 694-1234**
7
8  Attorneys for Plaintiff,
   SPEEDTRACK, INC.
9

McKool Smith Hennigan, P.C.
lawyers
los angeles, california

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  OAKLAND DIVISION

13

14  SPEEDTRACK, INC.,                      )  Case No. C-07-3602 PJH
                                           )
15                        Plaintiff,       )  **PLAINTIFF SPEEDTRACK'S**
                                           )  **OPPOSITION TO DEFENDANTS'**
16              vs.                        )  **MOTION FOR SUMMARY JUDGMENT**
                                           )  **THAT PLAINTIFF'S INFRINGEMENT**
17  OFFICE DEPOT, INC.; CDW CORPORATION;   )  **CLAIMS ARE BARRED BY RES**
    NEWEGG, INC.; CIRCUIT CITY STORES,     )  **JUDICATA, THE *KESSLER* DOCTRINE,**
18  INC.; PC CONNECTION, INC.; COMPUSA,    )  **AND COLLATERAL ESTOPPEL**
    INC.                                   )
19                                         )
                                           )
20                        Defendants.      )  **Date:  TBD**
                                           )  **Date:  TBD**
21                                         )  **Ctrm:  No. 3, Third Floor**
                                           )         Hon. Phyllis J. Hamilton
22  _____    )

23

24                  *REDACTED VERSION*

25

26

27

28

## TABLE OF CONTENTS

Page No.

I.     INTRODUCTION ................................................................................. 1

II.    SUMMARY OF ARGUMENT ............................................................. 2

III.   FACTUAL STATEMENT .................................................................... 4

IV.    ARGUMENT ....................................................................................... 7

       A.     Summary Judgment Standards ................................................ 7

       B.     SpeedTrack's Suit Is Not Barred by the *Kessler* Doctrine ........................... 7

              1.     *Kessler* Only Reiterates Defendants' (Failed) Collateral-
                     Estoppel Defense ................................................................ 7

              2.     *Kessler* Is Inapplicable When the Customer Combines the
                     Manufactured Product With Other Components ............................... 8

              3.     *Kessler* is Inapplicable Because Each Defendant Combines
                     the Endeca Software With Its Own Hardware, Software, and
                     Data To Manufacture a New System that It Uses to Perform
                     the Accused Methods ......................................................... 9

              4.     Defendants Lack Standing To Invoke *Kessler* and Have Not
                     Established Any Entitlement to an Injunction .................................. 10

       C.     SpeedTrack's Suit—Against New Defendants For Their Own
              Activities On Their Own Websites—Is Not Barred By *Res Judicata*,
              As It Involves Different Parties And Different Transactional Facts ........... 11

              1.     Defendants Have Failed To Prove Privity ....................................... 11

                     a)     The Court in *Kessler* Did Not Hold that Privity is
                            Satisfied Simply By a Customer's Use of the Product
                            at Issue .................................................................. 12

                     b)     Defendants Cannot Prove a Qualifying "Adequate
                            Relationship" ........................................................... 12

                     c)     Defendants Cannot Prove a Qualifying "Preexisting
                            Substantive Legal Relationship" ....................................... 14

              2.     Defendants Cannot Show Both Suits Had The Same
                     Transactional Facts .................................................................. 15

i

a)  As These Claims Were Not Asserted and Could Not Have Been Asserted in *Walmart*, They Cannot Be Barred by *Res Judicata* ......................................................... 15

b)  Defendants Cannot Establish That SpeedTrack's Claims Involve the Same Set of Transactional Facts as Those in *Walmart* ................................................. 17

D.  SpeedTrack's Suit—Alleging "Equivalents" Infringement, Not "Literal" Infringement—Is Not Barred By Collateral Estoppel, As It Involves Different And Unresolved Issues Of Law And Fact That Were Not Actually Litigated In Any Prior Proceeding .............................. 20

1.  Defendants Cannot Identify Any Identical Issues Of Fact Or Law ............................................................................... 20

2.  Defendants Cannot Show That The Doctrine Of Equivalents Was "Actually Litigated" .................................................. 23

3.  Defendants Have Not Demonstrated Any Reason For A Court To Exercise Its Discretion To Apply Collateral Estoppel On These Facts ...................................................................... 24

V.  CONCLUSION ......................................................................................... 25

CASE NO. C-07-3602 PJH                    SPEEDTRACK'S OPPOSITION TO DEFENDANTS'
                                          SUMMARY JUDGMENT MOTION RE RES JUDICATA

1

## <u>TABLE OF AUTHORITIES</u>

2

3 CASES

4 *Acumed LLC v. Stryker Corp.,*
    525 F.3d 1319 (Fed. Cir. 2008) ............................................................... 15, 18
5

6 *Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................ 7

7 *Applied Med. Res. Corp. v. U.S. Surgical Corp.,*
    435 F.3d 1356 (Fed. Cir. 2006) ................................................................... 20
8

9 *Applied Medical Resources Corp. v. United States Surgical Corp.,*
    352 F. Supp. 2d 1119 (C.D. Cal. 2005) ...................................................... 22

10 *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
    672 F.3d 1335 (Fed. Cir. 2012) ........................................... 15, 16, 17, 18
11

12 *Cooper Industries, Inc. v. Aviall Services, Inc.,*
    543 U.S. 157 (2004) ...................................................................................... 18
13

14 *Dana v. E.S. Originals, Inc.,*
    342 F.3d 1320 (Fed. Cir. 2003) ................................................................... 23

15 *eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ........................................................................................ 8
16

17 *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
    149 F.3d 1309 (Fed. Cir. 1998) ............................................................ 21, 24
18

19 *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
    93 F.3d 1572 (Fed. Cir. 1996) .............................................................. 21, 22

20 *Foster v. Hallco Mfg. Co,*
    947 F.2d 469 (Fed. Cir. 1991), 947 F.2d .............................................. 20, 24
21

22 *Gillig v. Nike, Inc.,*
    602 F.3d 1354 (Fed. Cir. 2010) ............................................................ 11, 15

23 *Graver Tank & Mfg. Co. v. Linde Air Products Co.,*
    339 U.S. 605 (1950) ...................................................................................... 21
24

25 *Home Diagnostics, Inc. v. Lifescan, Inc.,*
    120 F. Supp. 2d 864 (N.D. Cal. 2000) (Mot. 23 n. 14) .......................... 23

26 *Hydranautics v. Filmtec Corp.,*
    204 F.3d 880 (9th Cir. 2000) ....................................................................... 20
27

28

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994) ................................................................ 24

*Jet, Inc. v. Sewage Aeration Sys.*,
    223 F.3d 1360 (Fed. Cir. 2000) ........................................................ 11, 20

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ................................................................... 10

*Kessler v. Eldred*,
    206 U.S. 285 (1907) ........................................................................ passim

*Lantech, Inc. v. Keip Mach. Co.*,
    32 F.3d 542 (Fed. Cir. 1994) ................................................................ 23

*Lawlor v. Nat'l Screen Serv. Corp.*,
    349 U.S. 322 (1955) ............................................................... 15, 16, 20

*MGA, Inc. v. Gen. Motors Corp.*,
    827 F.2d 729 (Fed. Cir. 1987) .................................................. 2, 7, 8, 12

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007) .............................................................................. 10

*Network Commerce, Inc. v. Microsoft Corp.*,
    422 F.3d 1353 (Fed. Cir. 2005) ............................................................ 22

*Nystrom v. Trex Co.*,
    580 F.3d (Fed.Cir.2009) ................................................................ 18, 24

*Panduit Corp. v. HellermannTyton Corp.*,
    451 F.3d 819 (Fed. Cir. 2006) .............................................................. 21

*Pozen Inc. v. PAR Pharm., Inc.*,
    696 F.3d 1151 (Fed. Cir. 2012) ............................................................ 20

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) ............................................................ 22

*Reese v. Verizon Cal., Inc.*,
    498 F. App'x 980 (Fed. Cir. 2012). (Mot. 23) ..................................... 23

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008) ............................................................ 10

*Roche Palo Alto LLC v. Apotex, Inc.*,
    526 F. Supp. 2d 985 (N.D. Cal. 2007) ................................................. 22

*Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*,
    232 U.S. 413 (1914) ..................................................................... 2, 8, 9

iv

*Shoom, Inc. v. Elec. Imaging Sys. of Am.*,
   2011 U.S. Dist. LEXIS 114354 (N.D. Cal. 2011) ............................................. 9, 11

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985) (en banc) ................................................................ 7

*SpeedTrack, Inc. v. Walmart Stores, Inc.*,
   2013 U.S. App. LEXIS 7551 (Fed. Cir. 2013) ................................................. passim

*Sulzer Textil A.G. v. Picanol N.V.*,
   358 F.3d 1356 (Fed. Cir. 2004) .............................................................................. 21

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................. 11, 12, 13, 14

*Tech. Licensing Corp. v. Thomson, Inc.*,
   738 F. Supp. 2d 1096 (E.D. Cal. 2010) .......................................................... 11, 12

*Title v. INS*,
   322 F.2d 21 (9th Cir. 1963) ................................................................................... 24

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
   474 F.3d 1298 (Fed. Cir. 2007) .............................................................................. 12

*U.S. Gypsum Co. v. Indiana Gas Co.*,
   350 F.3d 623 (7th Cir. 2003) ................................................................................. 23

*Upjohn Co. v. MOVA Pharm. Corp.*,
   225 F.3d 1306 (Fed. Cir. 2000) .............................................................................. 22

*Vigil v. The Disney Co.*,
   2003 WL 22016805 (N.D. Cal. 2003) .................................................................... 23

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ........................................................................................... 21, 22

*Westwood Chem., Inc. v. Molded Fiber Glass Body Co.*,
   380 F. Supp. 517 (N.D. Ohio 1973) ......................................................................... 9

*Woodward Co. v. Hurd*,
   232 U.S. 428 (1914) ................................................................................................. 9

*Zip Dee, Inc. v. Dometic Corp.*,
   905 F. Supp. 535 (N.D. Ill. 1995) .......................................................................... 22

**STATUTES**

35 U.S.C. § 286 ........................................................................................................ 16

McKool Smith Hennigan, P.C.
lawyers
los angeles, california

# I.     INTRODUCTION

Defendants are wrong that SpeedTrack's lawsuit is foreclosed by "at least three" principles of preclusion.  Not one of these Defendants has ever obtained a prior judgment against SpeedTrack, and no one—not these Defendants or any other party from any earlier suit—has *ever* litigated or resolved the critical question presented here: whether the methods uniquely practiced by these Defendants infringe SpeedTrack's '360 patent under the doctrine of equivalents.  Endeca and Walmart had every occasion to litigate the "equivalents" issue for the methods practiced in the *Walmart* action,[1] but they deliberately resisted at every turn and left the issue *unadjudicated*.

This suit involves the unique search methods practiced by four Defendants who were not parties to the *Walmart* action; the infringement theory is not against Endeca's software itself, which cannot perform *any* methods without Defendants' hardware, software, and data.  This suit involves different activities, different transactional facts, new evidence, untested legal theories, novel (and fundamental) questions of patent law, and multiple issues that were not, and could not have been, before the Court in the *Walmart* action—and have never been litigated (much less resolved) in any court.  There is no such thing as absolute, blanket immunity for new parties accused of performing new and different acts in a new suit.  Defendants may prefer not to litigate any of these issues, but they cannot wish the *Walmart* action into something it was not—nor can they avoid required elements of *res judicata* (claim preclusion) or collateral estoppel (issue preclusion) in the process.

In short, Defendants are wrong that *Walmart*'s disposition—a judgment on *literal* infringement for *Walmart*'s and Endeca's unique implementation of Endeca's software in that period—precludes SpeedTrack's claims for *doctrine-of-equivalents* infringement involving different users, methods, websites, software, and time periods—all *different transactional facts*.  The absence of common parties and identical claims renders *res judicata* inapplicable; the absence of identical "issues of fact and law" dooms collateral estoppel, which prevents the *re*-litigation (not *initial* litigation) of settled issues from prior suits.  The key facts and issues are new, and Defendants' motion should be denied.

---

[1] The "*Walmart* action" refers to *SpeedTrack, Inc. v. Walmart Stores, Inc.*, et. al., Case No. C-06-7336 PJH and 2013 U.S. App. LEXIS 7551 (Fed. Cir. 2013).

## II.     SUMMARY OF ARGUMENT

Defendants have failed to show that the *Kessler* doctrine, *res judicata*, or collateral estoppel applies or that summary judgment is warranted.

**A**. **Kessler Doctrine:**  In their original motion to dismiss, Defendants said that the *Kessler* doctrine barred SpeedTrack's suit as a theory of "collateral estoppel."  Mot. 2, 22.  Defendants now change course and assert that *Kessler* is a form of "*res judicata*."  According to Defendants, the *Walmart* action "attached" certain rights to Endeca's software, and *Kessler* thereby immunizes that "software" in *any* subsequent suit.  This is wrong on multiple fronts.  The Federal Circuit has explicitly *rejected* Defendants' notion that *Kessler* presents some expansive form of "res judicata."  On the contrary, *Kessler* represents a specific application of *non-mutual collateral estoppel* at a time *before* courts recognized that doctrine.  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 733-34 (Fed. Cir. 1987).  It adds nothing beyond Defendants' collateral estoppel argument, which is presumably why the Federal Circuit has applied *Kessler* effectively *once* in its past *thirty years* of published decisions.  Defendants recognized these limits when they filed their initial motion, and their abrupt departure now (which they never acknowledge) is telling.

In any event, *Kessler* has been inapplicable on these facts for (literally) a full century.  In *Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.*, 232 U.S. 413, 419 (1914), the Supreme Court limited *Kessler* to situations where a *standalone* product was adjudicated non-infringing, and that same standalone product is later sold to a customer; *Kessler* has no role where the manufacturer supplies a component combined by someone else with other components to create some *new* product accused of infringement.  It is undisputed here that each Defendant combines a different version of the Endeca software with other components supplied by Defendants, including software, hardware, and data, and the resulting system is used to perform the accused, claimed methods (searching for files).  Even assuming *Kessler* applies to method patents at all, it does not apply where the method extends beyond the standalone product at issue in the first suit.

**B**. **Res Judicata**:  There is no identity of parties and claims in the earlier and later actions, and thus no *res judicata*.

***There Is No Privity:***  Because Defendants were not parties to the *Walmart* action,

1   Defendants invoke the "adequate representation" exception to establish privity.  But there is *no*

2   "adequate representation" for purposes of *res judicata* unless the parties understand that they are

3   representing each other, or the court uses specific procedures to protect non-party interests (*e.g.,*

4   class actions).  Defendants fail to establish either condition.  Defendants are wrong that a mere

5   indemnification agreement is sufficient to establish privity.  ████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████.

10          ***This Action Involves a Different Set of Transactional Facts***:  SpeedTrack could not have

11   raised these claims against these Defendants in the *Walmart* action, as required for *res judicata*.

12   This suit involves different defendants, methods, websites, acts of infringement, source code (a

13   different version for each Defendant), implementations of Endeca's software, and (once again) new

14   legal and factual issues.  The most that the earlier action determined was that the version of

15   Endeca's software, *as implemented by Walmart and Endeca*, did not literally infringe.  Given the

16   strict focus on transactional facts among the claims raised in the two lawsuits, even a suit against

17   *Walmart* itself for identical *post-judgment* activity—operating the identical software on the identical

18   website—would escape *res judicata*.  The governing standard asks whether the *particular facts* in

19   the suit are the same—and neither Walmart's conduct nor Endeca's conduct is identical to the

20   methods practiced by *Walmart's competitors* in independently operating their own websites.  The

21   different methods practiced by Defendants and Walmart dooms the *res judicata* defense.

22          **C**.  **Collateral Estoppel**:  Defendants' collateral estoppel defense fails because the identical

23   issues were not actually litigated or resolved in any earlier suit.

24          ***Equivalents Infringement Is a Separate Issue From Literal Infringement***:  "Equivalents"

25   infringement and literal infringement have different elements and are legally distinct.  They

26   represent two different doctrines, involve entirely different factors (legally and factually), and are

27   recognized as separate issues by the courts.  Collateral estoppel is designed to preclude the re-

28   litigation of *identical* issues, and it focuses on issues at a micro-level of granularity, element by

3

1   element.  This is *not res judicata's* test for the identity of parties and the existence of the same

2   operative facts.

3       ***Equivalents Infringement Was Not Litigated in the Walmart Action***:  The *Walmart* action

4   did not address or resolve the doctrine of equivalents.  In fact, *Walmart* and Endeca succeeded in

5   *removing* that issue from consideration.  A core dispute between the parties before this Court and

6   later the Federal Circuit was whether SpeedTrack could amend its infringement contentions to press

7   "equivalents."  The *Walmart* defendants successfully resisted SpeedTrack's efforts, chiefly because

8   *it would introduce too many <u>new legal and factual questions</u> into the case*.  It is impossible to read

9   the judgment as adjudicating an issue that was excluded from the suit.  Because equivalents

10  infringement was not litigated in the *Walmart* action, there can be no collateral estoppel here.

## III.   FACTUAL STATEMENT

12      In discussing the factual background, Defendants omit many material points and spin a host

13  of inferences in their favor.  Rather than tax the Court's limited resources with a full response to

14  each error, SpeedTrack submits this short statement underscoring the main facts relevant to this

15  motion.

16      1.  This suit and the *Walmart* action involve different parties, and Defendants suggest no

17  basis to connect themselves to Endeca or Walmart, aside from being indemnified by Endeca.

18      2.  Defendants assert that SpeedTrack withheld its claims under the "doctrine of equivalents"

19  in the *Walmart* action as a tactical strategy.  But Defendants never mention that the *Walmart* action

20  proceeded for years on the parties' shared assumption that numeric identifiers, as used in the file-

21  information directory, were "category descriptions" under the *Markman* order.  This factual premise

22  shaped the parties' filings in court and the PTO, until the defendants switched positions nearly three

23  years after discovery had closed.  As this Court recognized, SpeedTrack had no reason to consider

24  "equivalents" infringement until that time.  (Order 1:23-2:2; *Walmart* ECF No. 357; Exh. 1[2]) (the

25  switch was plaintiff's "first… reason to know of its need to amend its infringement contentions").

26      3.  When SpeedTrack attempted to assert a responsive "equivalents" claim, the defendants

---

[2] Unless stated otherwise, all Exhibits are attached to the accompanying Declaration of Alan P. Block ("Block Decl.") filed concurrently herewith.

1    forcefully resisted SpeedTrack's efforts—and ultimately succeeded in removing the "equivalents"

2    issue from the litigation.  As a primary factor for refusing to permit SpeedTrack's new claim, the

3    Court agreed with Walmart and Endeca (Exh. 2 at 9-10), holding that the new issue would likely

4    require "reopening discovery," "create new grounds upon which plaintiff could again seek a

5    dispositive ruling before trial," and thus "increase the scope of litigation." (Exh. 1 at 2:10-16).

6        4.  In granting summary judgment in *Walmart*, the Court followed the moving papers by

7    limiting its discussion to literal infringement.  (*Walmart* ECF No. 358, at 15:12-18; Exh. 3).

8        5.  The final judgment likewise was limited to literal infringement.  (Exh. 4).

9        6.  In this new suit, SpeedTrack has asserted infringement under the doctrine of equivalents

10   with respect to the "category descriptions" contained in the accused file information directories.  All

11   of the asserted claims of the '360 patent are method claims (independent claims 1 and 20).

12       7.  Defendants have not shown that Walmart used the same Endeca software that is accused

13   here.  Defendants have not established that *Walmart* used the same version(s) during the time period

14   in dispute in the *Walmart* action or even that each Defendant is now running the same Endeca

15   software.  To the contrary, PC Connection first implemented Endeca version 3.2 or 3.3 and now

16   runs version 6.1.4.  (Young Depo., at 79:15-80:7; Exh. 5).  Newegg currently uses version 6.3.5.

17   (Wang Depo., at 26:24-27:14; Exh. 6).  Office Depot first implemented version 4.6 and now runs

18   version 6.1.  (Peter Depo., at 32:14-23; Exh. 7).  CDW first implemented version 3.4 and now runs

19   version 6.2.  (Lazar Depo., at 15:10-16:13; Exh. 8).[3]

20       8.  As provided to customers, the Endeca software does nothing by itself.  Without more, it

21   cannot allow an end user to navigate or search for products sold on a website.[4]  To operate as

22   intended, each Defendant must first install its version of the Endeca software on its own hardware

23   and operate it using each Defendant's unique data.[5]  Each Defendant implements Endeca's platform

---

[3] Defendants are mistaken (Mot. 19) that SpeedTrack "accuses" the "same 'Endeca Information
Access Platform' that SpeedTrack accused in the *Walmart* case."  The *software* does not infringe;
Defendants' *use* of that software infringes.  (Am. Cplt., ECF No. 61, at ¶¶ 17-19; 32-34; 47-49 and
62-64; Exh. 18).  That "use" here involves different Defendants at different times.

[4] *See* Young Depo., at 54:8-55:7; Exh. 5; Wang Depo., at 178:11-182:23; Exh. 6.

[5] *See* Young Depo., at 52:9-54:7; Exh. 5; Wang Depo., at 178:11-182:23; Exh. 6; Peter Depo., at

5

1  in its own way;[6] the use of the Endeca software at issue here is thus not the "exact same" as its use

2  in *Walmart*.

3       9. A simple example highlights some of the differences between each Defendants'

4  implementation of Endeca's software.  Each Defendant sells the identical product on its website: a

5  Western Digital 1 TB portable hard drive, WDBK8A0010BBK-NESN.  Using different versions of

6  Endeca's software, each Defendant uses different hardware, software, and data to create its own

7  *unique* product record for that same hard drive—with different "PROP NAMEs" (i.e., property

8  names), "PVALs" (i.e., property values)," DIMENSION_IDs," and "IDs."  (*See* Exhs. 9 (PC

9  Connection); 10 (Newegg); 11 (Office Depot); and 12 (CDW)).  These differences reflect the

10  differences in how each Defendant implements its Endeca software in its own unique way.  Further,

11  end users navigate to that same hard drive differently on each Defendants' website.  (*See* Exhs. 13

12  (PC Connection); 14 (Newegg); 15 (Office Depot), and 16 (CDW)).  Lastly, screen shots of

13  *Walmart*'s website, submitted in the *Walmart* action, show that *Walmart*'s navigation functionality

14  was different from each Defendants' navigation methods here (*See* Block Decl.; ECF No. 325, at ¶¶

15  59-71; Exh. 17).

16       10. Defendants have not shown that each Defendant implements Endeca's software the way

17  that Walmart implemented Endeca's software.  Nor have Defendants shown that the "numeric

18  fields" are always *numeric* in each Defendants' implementation.  Defendants' evidence is limited to

19  product records showing the use of Endeca's software for a different product (*See* Exhs. B-E to the

20  Decl. of Joel Cavanaugh; ECF 70-1), and employee declarations.  In those declarations, each

21  employee provides the *identical statement* regarding the "numeric fields" in a binary file that each

22  has converted to a human-readable form: "To my knowledge, [Defendant] does not change the

23  format of the identified numeric fields in the Endeca file(s) identified above to be anything other

24  than numeric." (*See* Young Decl., at ¶6; Wang Decl., at ¶6; Peter Decl., at ¶6; Lazar Decl., at ¶6).

25

26

---

50:4-52:9; 92:4-93:11; Exh. 7; Lazar Depo., at 93:3-19; Exh. 8.

27

[6] For example, Defendant Newegg creates its own Dimension Value IDs (the numerical identifiers)

28  (Wang Depo., at 54:20-56:18; Exh. 6), whereas other Defendants do not.

These identical statements lack foundation.  The file is used in a non-human readable format,[7] and therefore none of these employees could have known what the software actually does or what is in the file.[8]

## IV.    ARGUMENT

### A.    Summary Judgment Standards

Summary judgment is appropriate only "where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc).  At this stage, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Courts view evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *Id.*

Defendants have failed to meet each part of this exacting standard.

### B.    SpeedTrack's Suit Is Not Barred by the *Kessler* Doctrine

#### 1.    *Kessler* Only Reiterates Defendants' (Failed) Collateral-Estoppel Defense

According to Defendants, the *Walmart action* "attached" certain rights to Endeca's software, and *Kessler* thereby immunizes that software's use by any customer—apparently as a sweeping form of "*res judicata*."  That is wrong.  Just months earlier, Defendants recognized that *Kessler* was "a theory of '*defensive collateral estoppel*,'" nothing more.  (Mot. 22; ECF 70).  Defendants may now prefer to recast the doctrine as something else, but their first choice was the right one.

Indeed, Defendants' new characterization is squarely at odds with controlling law.  The Federal Circuit has already held that *Kessler* is merely an application of "defensive collateral estoppel."  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, (Fed. Cir. 1987).  Because *Kessler* is cut from the same cloth as collateral estoppel, it adds nothing that is not already available under that doctrine.  Defendants' failure to prove collateral estoppel thus proves their failure under *Kessler*.

---

[7]  *See* Decls. Of Young, Wang, Peter, and Lazar, at ¶5.

[8]  Young Depo., at 24:5-26:1; Exh. 5; Wang Depo., at 29:22-31:21; Exh. 6; Peter Depo., at 34:8-35:19; 40:17-43:3; Exh. 7; Lazar Depo., at 69:15-20; Exh. 8.

Defendants' aggressive use of *Kessler* is wrong in any event.  As Defendants see it, this new immunity sweeps past and is broader than *every* preclusion doctrine.  It goes beyond *res judicata*, because it applies even to products arising after the initial suit was concluded and irrespective of privity.  It goes beyond collateral estoppel, because it sweeps past the issues litigated in the first suit, apparently foreclosing *any* future litigation over the "rights" to sell the product.  Indeed, according to Defendants, Endeca's *customers* would have broader rights from the *Walmart* suit *than Endeca itself*—since Endeca would presumably remain subject to ordinary rules of *res judicata* and collateral estoppel.  The Supreme Court has already cautioned against presuming any departures from ordinary legal principles in cases arising under the Patent Act.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006).  Yet Defendants' view of *Kessler* would set up a direct conflict with controlling preclusion doctrine in every circuit, and would stand out of step with the Federal Circuit's views in *MGA*.  Defendants' (ever-shifting) theory is indefensible and should be rejected.

### 2.  *Kessler* Is Inapplicable When the Customer Combines the Manufactured Product With Other Components

Contrary to Defendants' contention, *Kessler* has no role here.  Under *Kessler*, when a manufacturer proves that its product does not infringe, it secures a limited right to sell that product to customers (and for customers to purchase that product) without interference from the patentee. *Kessler v. Eldred*, 206 U.S. 285, 289-90 (1907).  *Kessler*, however, is *limited* to situations, unlike here, where the manufacturer sells a *standalone* product (*e.g.*, a cigar lighter) that was found not to infringe a *product* claim; it does *not* apply where, as here, the manufacturer (*e.g.*, Endeca) sells a *component* (*e.g.*, Endeca software) that a customer later combines with other components (*e.g.*, each customer's own hardware, software, and data) into a new product—and that *new, combined* product allegedly infringes a product claim (much less a *method* claim).  *Rubber Tire.*, 232 U.S. at  419.[9]

In *Rubber Tire*, Goodyear won a verdict that Rubber Tire's Grant patent was invalid (the Supreme Court later upheld the patent's validity in another case).  *Rubber Tire*, 232 U.S. at 414-15.  The Grant patent claimed a tire having three components, one of which was a rubber tire with a

---

[9] Defendants cite *Rubber Tire* (Mot. 16), but fail to distinguish or even address its holding.

certain shape.  *Id.* at 415.  After Goodyear established invalidity, it sold rubber to customers who used Goodyear's rubber—combined with other components from other parties—to manufacture a complete tire.  *Id.* at 416.  Rubber Tire sued those customers for infringing the Grant patent by selling tires with Goodyear's rubber and non-Goodyear components.  *Id.*, 414.  In response to those lawsuits, Goodyear sought an injunction, under *Kessler*, prohibiting Rubber Tire from suing any Goodyear customer for infringing the Grant patent.  The lower courts granted the injunction.  *Id.*

The Supreme Court, however, reversed, allowing Rubber Tire to sue Goodyear's customers.  The Court limited *Kessler* to instances where the patent owner sued customers for buying, using, or reselling the patented *article* (*e.g.*, the lighter claimed in the patent-in-suit) that was declared non-infringing in the patent owner's original lawsuit against the manufacturer.  *Rubber Tire*, 232 U.S. at 418 ("Under the doctrine of *Kessler v. Eldred*, the respondent [Goodyear]—by reason of the final adjudication in its favor—was entitled to make and sell the Grant structure, and to have those who bought that structure from it unmolested in taking title and in enjoying the rights of ownership.").

The Court further held, however, that *Kessler* was inapplicable when a manufacturer combines one component from the patent owner with *other* components to produce a new product:

> [W]hen other persons become manufacturers on their own behalf, assembling the various elements and uniting them so as to produce the patented device—a new article—it is manifest that the respondent cannot insist upon their being protected from suit for infringement by reason merely of its right to make and sell, and the fact of its having made and sold, some component part of that article.

*Rubber Tire*, 232 U.S. at 419; *see also Woodward Co. v. Hurd*, 232 U.S. 428, 429-30 (1914) (same); *Shoom, Inc. v. Elec. Imaging Sys. of Am.*, 2011 U.S. Dist. LEXIS 114354, at *7 (N.D. Cal. 2011) ("'If that commodity is combined with other things in the process of the manufacture of a new commodity, the trade right in the original part as an article of commerce is necessarily gone.'") (quoting *Rubber Tire*, 232 U.S. at 418-19); *Westwood Chem., Inc. v. Molded Fiber Glass Body Co.*, 380 F. Supp. 517, 524-25 (N.D. Ohio 1973).

### 3. *Kessler* is Inapplicable Because Each Defendant Combines the Endeca Software With Its Own Hardware, Software, and Data To Manufacture a New System that It Uses to Perform the Accused Methods

*Rubber Tire* is directly analogous here.  The undisputed facts show that the Endeca software

9

is not a standalone product, it cannot infringe by itself, and each Defendant combines the software with its own unique components—hardware, software, and data—to perform the claimed methods:

(1) the claims here and in *Walmart* are method claims, which are "directly infringed only when the process is performed."  *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993);

(2) Endeca licenses its software to Defendants but supplies nothing else (hardware, software, or data) (*See e.g.,* Section III, paragraph 8, *supra*);

(3) Endeca's software alone cannot perform the patented methods.  For example, claim 1 requires the creation of a category description table with category descriptions, a file information directory, and a search filter used to locate files.  Endeca's software has none of these structures or data.  Without components to perform searches, Endeca's software itself cannot infringe the claimed methods.  *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)"); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 446 (2007); and

(4) Each defendant implements Endeca's software by combining the software with its own servers, software, and data—none provided by Endeca—to perform the patented search for files. (*See e.g.,* Section III, paragraphs 8-9, *supra*)

This proves Defendants' error in asserting that Endeca's software is a standalone product that was itself adjudicated not to infringe  (Mot. 16).  The Court never determined that Endeca's software did not infringe a *method* claim, nor could it have.  In *Walmart*, Walmart and Endeca moved for summary judgment that "*Walmart.com* does not directly infringe the asserted claims. . . ." (Mot. for Summ. Judg., Doc. 322, at 8:19-20; emphasis added; Exh. 19).  The Court addressed only Walmart.com's system in its order.  (ECF 358, *See, e.g.*, 10:21-11:44; 14:1-7; 14:20-15:11; 16:5-9; Exh. 3).  Walmart.com's system includes Walmart.com's hardware, software, and data; Endeca's software alone cannot infringe method claims.  *Ricoh*, 550 F.3d at 1335; *Microsoft*, 540 U.S. at 446.  In any event, SpeedTrack does not accuse the Endeca software, standing alone, of infringement in this case (just as it did not in the *Walmart* action).  (*See* Exhs. 18 and 29).

**4.     Defendants Lack Standing To Invoke *Kessler* and Have Not Established Any Entitlement to an Injunction**

1    Defendants' motion under *Kessler* fails for two extra reasons.  First, Defendants, as Endeca

2   customers, lack standing to invoke *Kessler*.  *Kessler* involved a manufacturer, not a customer; it

3   obtained relief to enforce its *own* prior judgment.  No court has held that customers have standing to

4   enforce *another party's* judgment.  *See Kessler*, 206 U.S. at 289 (reserving this question); *Tech.*

5   *Licensing Corp. v. Thomson, Inc.*, 738 F. Supp. 2d 1096, 1101-02 (E.D. Cal. 2010) ("The Supreme

6   Court, Federal Circuit, and Ninth Circuits…have declined to address the issue of whether the

7   customer has the right to invoke the *Kessler* doctrine as a defense to patent infringement suits.").

8    Second, by invoking *Kessler*, Defendants seek to *enjoin* SpeedTrack from prosecuting this

9   action.[10]  Yet, Defendants never establish the necessary elements for injunctive relief: (1) they have

10   not suffered irreparable injury; (2) legal remedies are  adequate to compensate for any injury; (3) the

11   balance of hardships between Defendants and SpeedTrack tips in favor of SpeedTrack; and (4) the

12   public interest is disserved by a permanent injunction forever barring the enforcement of a valid

13   patent.  *Shoom*, 2011 U.S. Dist. LEXIS 114354, *5 (quoting *eBay*, 547 U.S. at 391).

14   ### C.   SpeedTrack's Suit—Against New Defendants For Their Own Activities On Their Own Websites—Is Not Barred By *Res Judicata*, As It Involves Different Parties And Different Transactional Facts

15

16    Defendants cannot satisfy two core elements of *res judicata*: (i) these parties and those in

17   *Walmart* are not "identical or in privity"; and (ii) the two actions do not involve "the same claim or

18   cause of action."  *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1361 (Fed. Cir. 2010) (internal quotation

19   marks omitted); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000) (same).

20   ### 1.   Defendants Have Failed To Prove Privity

21    *Res judicata* requires a perfect identity of parties or their privies.  *Jet, Inc.*, 223 F.3d at 1362.

22   None of Defendants were parties to the *Walmart action*.  Therefore, *res judicata* requires each

23   Defendant to prove privity with Endeca, who was a party in *Walmart*.  Privity is a "discrete

24   exception" in "limited circumstances" to the rule that "one is not bound by a judgment *in personam*

25   in a litigation in which he is not designated as a party or to which he has not been made a party by

26   service of process."  *Taylor v. Sturgell*, 553 U.S. 880, 893, 898 (2008) (quoting *Hansberry v. Lee*,

27   

28   
---
[10] *Kessler* granted an anti-suit injunction, an equitable remedy, because Kessler lacked an adequate remedy at law. *See* 206 U.S. at 290.

311 U.S. 32, 40 (1940)).  Defendants do not fit within this limited exception.

### a)        The Court in *Kessler* Did Not Hold that Privity is Satisfied Simply By a Customer's Use of the Product at Issue

According to Defendants, *Kessler* held that, "in patent cases, the privity element is satisfied simply by a customer's use of the *product* at issue" (Mot. 15); because "it is the identity of the *product* that matters…[,] *res judicata* does not require any written contract between the manufacturer and its customer" for privity. (Mot. 17).  Even putting aside that there is no identity of parties here, Defendants' expansive reading of *Kessler* is wrong.  *Kessler* explicitly *disclaimed* any decision on privity or any other paramount right bestowed on the articles themselves: "Whether the judgment between Kessler and Eldred is a bar to the suit of *Eldred v. Breitweiser*, either because Breitweiser was a privy to the original judgment, or because the articles themselves were by that judgment freed from the control of the that patent, we deem it unnecessary to inquire."  206 U.S. at 612-13; *see also MGA*, 827 F.3d at 734.[11]

Further, Defendants' interpretation of *Kessler* conflicts with controlling Federal Circuit law: "a manufacturer or seller of a product who is sued for patent infringement typically is not in privity with a party, otherwise unrelated, who does no more than purchase and use the product." *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007).

### b)        Defendants Cannot Prove a Qualifying "Adequate Relationship"

Defendants also rely (Mot. 17) upon two exceptions in *Taylor* to attempt to establish privity, but neither applies: there was no "adequate representation" or "preexisting substantive legal relationship."

Under the "adequate representation" exception, "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party.'" *Taylor*, 553 U.S. at 894 (quoting *Richards v. Jefferson*

---

[11] Defendants cite *Tech. Licensing*, 738 F. Supp. 2d at 1101, for its statement that "[t]he *Kessler* doctrine appears to be nothing more than a patent-specific application of *res judicata* between manufacturers of allegedly infringing products and their customers."  *MGA* forecloses treating *Kessler* as a *res judicata* case—a sound conclusion given *Kessler*'s explicit statement that a finding of privity (required for *res judicata*) was unnecessary to its decision.  *Kessler*, 206 U.S. at 612-13.

*County*, 517 U.S. 793, 798 (1996)).  This is not "adequate representation" in a colloquial sense.  The exception is limited to particular suits defined by formal procedures ("properly conducted class actions") or specific, traditional legal relationships ("suits brought by trustees, guardians, and other fiduciaries").  *Id.* at 894.  Further, there is no privity unless the party supposedly "representing" the non-party *understood* that she was acting in a representative capacity (or the court took steps to protect that party's interests).  *Id.* at 900-01.

Defendants cannot establish that they were "adequately represented" by Endeca in the *Walmart action*.  (Mot. 17-18).  Defendants attempt to prove their case with a copy of their license agreements with Endeca, *with the entirety of each agreement redacted*, except for Section 9's indemnification provision.  (*See* Exhs. L-O to the Cox Decl., ECF 98).  But Section 9 merely establishes that Endeca would pay for Defendants' litigation costs and losses if they were sued for infringement; it does not establish that Endeca agreed to *represent* Defendants' interests in such actions.  It nowhere conveys Endeca's understanding that it would represent Defendants' interests or that Defendants would be bound by the outcome of any litigation conducted by Endeca (win or lose).  Even read alone, Section 9 falls short in showing privity via "adequate representation."

But Section 9 cannot be read alone.  In a section *redacted* by Defendants twice in filings with this Court—once when submitting the agreements with this motion and previously with its original motion to dismiss[12]— ██████████████████████████████████████████

██████████████████████████████████████████:

████████████████████████████████████ ██████████████████████████

(Exhs. 21 (Office Depot); 22 (PC Connection); 23 (Newegg); 24(CDW); emphasis added).  Thus, these agreements—in passages conspicuously removed and uncited by Defendants—establish on

---

[12]  At the November 6 hearing, in conduct that, if by design, would be inappropriate, Defendants urged the Court to find privity and bar SpeedTrack's claims on the basis of only these highly redacted versions of the Agreement.  Defendants had *not* produced to SpeedTrack or the Court the full text (Exhs. G-K to Cavanaugh Decl., ECF 88).  SpeedTrack had to specifically request the unredacted versions before Defendants would produce them.  (Exh. 20).

13

1  their face that the indemnification provision does *not* transform Endeca into "an adequate

2  representative" for any purpose. ████████████████████████████████████████████

3  █████████████████████████████████████████████████████████████████████████████

4  ████████████████████████   Even if Defendants had other proof suggesting "adequate

5  representation" (and they do not), they cannot overcome the effect of this clause for purposes of

6  summary judgment.  And this is to say nothing of other facts (also unmentioned by Defendants) that

7  cut against a finding of privity under *Taylor* (*see* 553 U.S. at 894, 900-01), including that, ████

8  █████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████

10      c)      **Defendants Cannot Prove a Qualifying "Preexisting Substantive**

11              **Legal Relationship"**

12      Non-party preclusion also "may be justified based on certain pre-existing 'substantive legal

13  relationship[s]' between the person to be bound and a party to the judgment."  *Taylor*, 553 U.S. at

14  894.  "Qualifying relationships include, but are not limited to, preceding and succeeding owners of

15  property, bailee and bailor, and assignee and assignor."  *Id.*

16      Defendants do not present any facts establishing this exception.  Defendants describe

17  themselves as Endeca's "licensees," but licensees *lack* the strong connection typical of the

18  traditional relationships cited in *Taylor*.  This is presumably why Defendants have no precedent

19  declaring a licensee-licensor relationship as sufficient to establish privity.  (Mot. 17).  In any event,

20  █████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  █████████████████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████

27      Privity is an indispensable element of Defendants' *res judicata* defense, and they have failed

28  to carry their burden on that prong.  Their *res judicata* defense accordingly fails.

14

2.     **Defendants Cannot Show Both Suits Had The Same Transactional Facts**

"[A] claim for patent infringement can only be barred by *res judicata* [claim preclusion] if that claim arises from the same transactional facts as a prior action."  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008).

In *Walmart*, the critical "nucleus of operative facts" (*Gillig*, 602 F.3d at 1363) was limited to Endeca's and Walmart's implementation of Endeca's software during the period at issue—nothing more.  Those facts did *not* include any other entity's use of Endeca software: the controlling law asks whether the present claims "w[ere] asserted[] or could have been asserted" in past litigation. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012).  A claim against *these* Defendants (*e.g.*, Newegg's use of its own website) could not have been asserted in litigation *against Walmart*.  Each Defendants' activities give rise to *distinct* infringement claims.

a)     **As These Claims Were Not Asserted and Could Not Have Been Asserted in *Walmart*, They Cannot Be Barred by *Res Judicata***

In *Aspex*, the Federal Circuit directly resolved whether *res judicata* bars a lawsuit involving products that did not exist at the time of an original suit, no matter how similar those products were to the original products.  672 F.3d at 1342.  The court held that *res judicata* does not bar such a suit: *res judicata* is limited to claims that were asserted or could have been asserted in the prior action. *Id.*, at 1343.  As a matter of logic, claims directed to products that did not exist during the original suit could not have been asserted in that prior action, *regardless of whether the new products are essentially the same as the products that were part of the original lawsuit.  Id.* at 1342; *see also Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).  Thus, in patent cases, a "claim," for preclusion purposes, "encompass[es] only the particular infringing acts or products that are accused in the first action or could have been made subject to that action."  *Aspex*, 672 F.3d at 1343.  It "embrace[s]" *only* "the specific devices before the court in the first suit."  *Id.* (quoting *Young Engineers, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)).

Here, the *Walmart* action ended on May 25, 2007[13]; this action covers Defendants' alleged

---

[13]  SpeedTrack filed its *Walmart* complaint on November 29, 2006, alleging infringement by *Walmart*  (Exh. 29).  Later, Endeca intervened and SpeedTrack counterclaimed against Endeca on

1    infringing acts between July 12, 2001 and June 28, 2013.[14]   Thus, it is indisputable that a major

2    percentage of SpeedTrack's present claims—involving Defendants' use of the accused methods

3    from *May 26, 2007 to June 28, 2013*—did not even *exist* while the *Walmart* action was pending.

4    Under *Aspex*, it is settled law that those claims cannot be barred by *res judicata* for that reason

5    alone.  672 F.3d at 1342-43 ("If the claim did not exist at the time of the earlier action, it could not

6    have been asserted in that action and is not barred by *res judicata*."); *Lawlor*, 349 U.S. at 328.

7            Defendants fare no better with the remainder of SpeedTrack's present claims from *July 12,*

8    *2001 to May 25, 2007.*  Those claims could not have been brought in the *Walmart* action (key word:

9    *Walmart*) because SpeedTrack could not blame *Walmart* (or Endeca) for acts taken by *Walmart's*

10   *competitors*—Office Depot, PC Connection, Newegg, or CDW.  Again, "the 'claim' that gives rise

11   to preclusion [encompasses] only the particular infringing acts or products that are accused in the

12   first action or could have been made subject to that action."  *Aspex*, 672 F.3d at 1343 (citing *Young*

13   *Engineers*, 721 F.2d at 1316); *Lawlor*, 349 U.S. at 328.

14           The following timelines compare SpeedTrack's claims in *Walmart* (red line) to the claims

15   here (blue line)—depicting, unmistakably, how the claims in each action are based on different sets

16   of transactional facts:

17

18

19

20

21   ──────────────────────────────────────────────────────────

22   May 25, 2007, for indirectly infringing the '360 patent.  (Exh. 30).  SpeedTrack never supplemented
     its *Walmart* pleadings and did not include infringing acts by *Walmart* and Endeca after its complaint

23   was filed; thus, SpeedTrack's claims against Endeca ended as of May 25, 2007.  *See Aspex Eyewear*,
     672 F.3d at 1345 (citing *Gillig*, 602 F.3d at 1363).

24   [14]  SpeedTrack filed its original complaint in this Action on July 12, 2007 and filed its First

25   Amended and Supplemental Complaint on June 28, 2013.  (Exhs. 31 and 18, respectively).  In its
     First Amended Complaint, SpeedTrack alleged that each Defendant has infringed SpeedTrack's

26   '360 patent by, among other things, practicing the claimed methods for the time period between July
     12, 2001 (six years prior to the filing of SpeedTrack's original complaint, pursuant to 35 U.S.C. §

27   286) through the filing date of the First Amended Complaint, June 28, 2013.  (Exh. 18, at Paras. 17-
     19; 32-34; 47-49; and 62-64).

28

                                                    16

1



8

9

10

11

12

13

14

15

16

17

18     Thus, as a matter of law, SpeedTrack's claims here involve a different set of transactional

19  facts and are not barred by *res judicata*.  *Aspex* squarely resolves this issue, yet Defendants' motion

20  never once even acknowledges this controlling authority.

21                          **b)      Defendants Cannot Establish That SpeedTrack's Claims Involve**
                                  **the Same Set of Transactional Facts as Those in *Walmart***
22

23     By refusing to discuss, distinguish, or even cite *Aspex*, Defendants are left asserting incorrect

24  statements of law.  According to Defendants, *res judicata* turns entirely on the following test: "the

25  accused product in the second suit must be 'essentially the same' as the accused product in the first

26  suit."  (Mot. 18).  Not exactly.  Defendants mistake a necessary condition for a sufficient one:

27  Whether the product in the second action is "essentially the same" is relevant *only* if the second

28  claim could have been raised in the first action: stated differently, *if* (1) the second claim existed

                                                    17

1  during the first action; *and* (2) the second claim could have been brought in the first action, *then* (3)

2  *res judicata* applies only if the products accused in the second action are identical to, or "essentially

3  the same" as, the products that were the subject of the first action.  *Aspex*, 672 F.3d at 1342-43; *See*

4  *also*, *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008).  Because Defendants fail

5  points (1) and (2), it makes no difference whether they satisfy point (3).[15]

6          In any event, even if Defendants could prove the impossible—that SpeedTrack could have

7  asserted claims against *these Defendants* for acts performed between 2001 to *2013* in a suit *against*

8  *Walmart* and Endeca that ended in *2007*—Defendants still cannot show that Defendants' accused

9  methods are "essentially the same" as those in the *Walmart* action.

10          First, Defendants are incorrect that SpeedTrack "alleged" that each Defendant's use of

11  Endeca's product mirrors the use in *Walmart*.  (Mot. 18-19).  Aside from ignoring the difference

12  between allegations and facts, Defendants misstate SpeedTrack's allegations.  The operative

13  complaint does *not* allege that each Defendant infringes based *solely* on its use of Endeca's software.

14  It says that Defendants combine Endeca's software *with other components*, including Defendants'

15  websites, to practice the claimed methods.  (*See* Exh. 18, Paras. 12, 17, 32, 47, and 62).

16  SpeedTrack's allegations thus highlight *differences* between Defendants' accused acts and the

17  accused acts in *Walmart*—which, of course, did not involve *Defendants'* unique websites.

18          Second, the "accused" activity is not a product, but a method—it involves each Defendant

19  *uniquely* implementing different software and engaging in its own activities (*i.e.*, practicing the

20

21  _____

    [15] Defendants may assert that *Nystrom* held that *res judicata* bars a second lawsuit even though the

22  products at issue in the second action came into existence after the conclusion of the first action
    (*Nystrom v. Trex Co.*, 580 F.3d at 1281, 1284 (Fed.Cir.2009)).  In *Nystrom*, however, the court

23  neither raised nor resolved whether *res judicata* applies when the products at issue did not exist
    during the first action.  It instead answered the narrow question posed by the parties: whether a

24  minor alteration, leaving the second product "essential the same" as the first, could undermine *res*
    *judicata* *if res judicata* otherwise applied.  It is well settled that a court *holds* nothing on legal points

25  it does not address: "'Questions which merely lurk in the record, neither brought to the attention of
    the court nor ruled upon, are not to be considered as having been so decided as to constitute

26  precedents.'"  *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 170 (2004) (quoting
    *Webster v. Fall*, 266 U.S. 507, 511 (1925)).  Any attempt to read *Nystrom* as deciding a principle it

27  never addressed would also set up *Nystrom* in direct conflict with controlling law.  *Nystrom* should
    be confined to its intended scope.

28

claimed methods).  Those "transactional facts" give rise to SpeedTrack's claims—the alleged

similarities between this unique conduct does not render each independent infringing act "identical"

to activity in earlier litigation.  Consistent with these facts, Defendants apparently admit that Endeca

customers use different versions of Endeca's software, different websites, and different product

inventories (Mot. 19).  It is thus undisputed that Defendants' accused acts are *not* "essentially the

same" as those in the *Walmart* action.  That is a sufficient basis for denying summary judgment.

Nor may Defendants cure this deficiency by saying that each Defendant uses "numeric

'dimension value identifiers.'"  (Mot. 19).  Defendants have not shown that such numbers are

*always* used, that any used numbers are *exactly* the same, or that any identical numbers were used in

the *Walmart* action.  Moreover, while the use of numbers might be relevant for *literal* infringement,

it does not resolve "*equivalents*" infringement.  Finally, even if Defendants found a single common

fact, they have not found what *res judicata* demands—perfect unity of *all* transactional facts.

Defendants, in sum, effectively contend that *res judicata* somehow sweeps in any conduct

that *resembles* conduct in a prior suit.  But the fact that Walmart's use of Endeca's platform may

resemble (for example) Office Depot's use of similar software does not convert the earlier suit

involving Walmart into a suit involving Office Depot.  That novel theory would eviscerate the

distinction between claim and issue preclusion, and extend the sweep of *res judicata* to non-parties

and new activity never before involved in any litigation.  There is no legal or logical basis for

rewriting the doctrine in such an extraordinary fashion.

Because Defendants have no answer for these points, they instead insist that *Walmart* gives

rise to *res judicata* on *any* issue (including "equivalents") that even *might* have been raised in that

case, whether it was litigated or not.  (Mot. 20-21).  That is correct as to Walmart and Endeca—at

least for the time periods and conduct in question—but wholly irrelevant here.  SpeedTrack never

claimed the right to split its earlier claims and re-litigate *against Walmart and Endeca* for the

conduct at issue in *Walmart*.  Any issues involving those transactional facts are bound up with that

judgment, and Walmart or Endeca (or their privies) may invoke *res judicata* as to those transactional

facts.  SpeedTrack's point is simply that these Defendants and these transactional facts are distinct.

Likewise, it is irrelevant that SpeedTrack did not initially assert "equivalents" infringement

1   in the *Walmart action*.  (*Contra* Mot. 22).  That argument would be relevant—and well taken—had

2   SpeedTrack *again* sued Walmart: where the transactional facts and parties are the same, *res judicata*

3   applies to *all* issues, litigated or not.  *Jet, Inc.*, 223 F.3d at 1362.  But that point has no bearing on a

4   suit against other parties—except in showing why *collateral estoppel* does not apply.  *See infra*.[16]

**D.    SpeedTrack's Suit—Alleging "Equivalents" Infringement, Not "Literal" Infringement—Is Not Barred By Collateral Estoppel, As It Involves Different And Unresolved Issues Of Law And Fact That Were Not Actually Litigated In Any Prior Proceeding**

8   Under collateral estoppel, "a judgment precludes relitigation of issues actually litigated and

9   determined in the prior suit."  *Lawlor*, 349 U.S. at 326; *see also Jet, Inc.*, 223 F.3d at 1366

10  (requiring "identity of the issues in a prior proceeding" and that "the issues were actually litigated");

11  *Hydranautics v. Filmtec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

12  In this case, Defendants have not shown identical "issue[s] of fact or law" (*Applied Med.*

13  *Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1360 (Fed. Cir. 2006)), and they certainly have

14  not shown that those pertinent issues were "actually litigated" (*Foster v. Hallco Mfg. Co,* 947 F.2d

15  469, 480 (Fed. Cir. 1991), 947 F.2d at 480).  But even if every element were met, collateral estoppel

16  is an equitable doctrine; its application is not mandatory, but discretionary, and there are sound

17  reasons not to invoke it on these facts.

**1.    Defendants Cannot Identify Any Identical Issues Of Fact Or Law**

19  Contrary to Defendants' contentions, this suit presents different issues because literal

20  infringement is not the same as "equivalents" infringement.  Defendants may wish to overlook this

21  distinction, but the Federal Circuit will not:  "[t]here are *two types* of infringement: literal

22  infringement…and infringement under the doctrine of equivalents."  *Pozen Inc. v. PAR Pharm., Inc.*,

23  696 F.3d 1151, 1167 (Fed. Cir. 2012) (emphasis added).

---

[16] In any event, Defendants are incorrect that SpeedTrack made a "tactical decision" to forgo the doctrine of equivalents.  (Mot. 22).  As the Court itself recognized (Exh. 1, at 1:23-2:2), SpeedTrack had no reason to assert the doctrine of equivalents until Walmart and Endeca changed their core infringement defense.  While SpeedTrack attempted to assert the doctrine of equivalents in response, the Court sustained Walmart's and Endeca's objections—asserting that the only "tactical" decision was seeking to bar *defendants'* switch under judicial estoppel rather than simply amending SpeedTrack's own contentions.

SPEEDTRACK'S OPPOSITION TO DEFENDANTS'
SUMMARY JUDGMENT MOTION RE RES JUDICATA

The doctrine of equivalents is a court-created doctrine.  It protects patent owners from unscrupulous copyists and avoids placing patent owners at the mercy of verbalism.  *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 606 (1950) ("The essence of the doctrine [of equivalents] is that one may not practice a fraud on a patent.").  According to the theory, "'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.'"  *Id.*

The Federal Circuit has carefully designated infringement under the doctrine of equivalents as an independent "claim" or "issue"—*not* just an argument in support of "infringement" generally.  *See e.g.*, *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1368 (Fed. Cir. 2004) ("any claim of infringement under the doctrine of equivalents"); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1318 (Fed. Cir. 1998) ("*Dolly*, *Weiner*, and *Sage* were decided on their facts, and were consistent with both our precedent and with the Supreme Court's recent express adherence to the doctrine of equivalents as a viable alternative to literal infringement"); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1583 (Fed. Cir. 1996) ("the issue of infringement by equivalents")[17]; *Pfaff*, 5 F.3d at 520 (treating "literal infringement" and "infringe[ment] under the doctrine of equivalents" as two distinct issues).

The circuit's consistent articulation is not accidental.  The doctrine of equivalents implicates multiple issues of law and fact that are wholly distinct from literal infringement.  The doctrine has "various legal limitations" peculiar to it (*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)), including "prosecution history estoppel and the 'all elements' rule" (*Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 826 (Fed. Cir. 2006)).  The ultimate "determination

---

[17]  *Ethicon* demonstrates that the Federal Circuit treats literal infringement and infringement under the doctrine of equivalents as distinct issues.  93 F.3d at 1583.  In *Ethicon*, the district court issued a generic summary judgment of "noninfringement," but made no findings with respect to the issue of infringement under the doctrine of equivalents.  *Id.*  The Federal Circuit could not tell from the record "whether the issue [of equivalents] was briefed and argued to the district court," and therefore the Federal Circuit remanded the case to the district court to articulate whether any triable issues of fact exist with respect to infringement by equivalents.  *Id.*  Ultimately, the Federal Circuit held that issues of fact did exist on the issue of equivalents.  *Ethicon*, 149 F.3d at 1321.  Had the Federal Circuit followed Defendants' view that infringement is a single issue that includes both literal and equivalents infringement, the Federal Circuit would not have remanded but simply would have accepted the district court's summary judgment order of "noninfringement."

of equivalency is a question of fact" (*Upjohn Co. v. MOVA Pharm. Corp.*, 225 F.3d 1306, 1309 (Fed. Cir. 2000))—one requiring a deliberate analysis of "the context of the patent, the prior art, and the particular circumstances of the case" (*Warner-Jenkinson*, 520 U.S. at 24).  *See also Ethicon Endo-Surgery*, 93 F.3d at 1583.  Further, under the doctrine, a patentee must establish a link between the claims and the accused device, including the insubstantiality of any deviations (such as the product accomplishing the same function, in the same way, to produce the same result.  *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005).  Literal infringement, by contrast, merely requires a simple comparison of the construed claims to the accused product or method.  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012).

Indeed, the existence of these stark differences drove this Court's own analysis in refusing to permit the "equivalents" claim in the earlier proceeding.  The Court agreed with Walmart and Endeca that SpeedTrack could not amend its infringement contentions because it would inject an entirely new issue into the case (Exh. 2, at 9:13-10:2); it would require new discovery, new evidence, and new merits briefing.  (Exh. 1, at 2:10-16).  The obvious need for that new material underscores all the factual and legal questions that were not "identical" to the literal-infringement issues underlying *Walmart*'s judgment.  Because these issues are not the same, the earlier judgment does not preclude their consideration in this new lawsuit.

Defendants nevertheless argue that courts, for preclusion purposes, treat the "issue" as the "entire, ultimate issue such as infringement or invalidity."  (Mot. 24).  But that reads these cases too broadly.  Not a single cited decision says that a decision on literal infringement controls in a case involving equivalents.  It may be true that, under certain circumstances, parties may not assert new "arguments" in support of the same invalidity contentions—which is the ultimate point of Defendants' non-Federal Circuit, fact-bound authority.[18]  But Defendants cannot sweep aside the material differences between literal and equivalents infringement by citing distinguishable cases

---

[18] *See Applied Medical Resources Corp. v. United States Surgical Corp.*, 352 F. Supp. 2d 1119, 1125 (C.D. Cal. 2005); *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994-95 (N.D. Cal. 2007); and *Zip Dee, Inc. v. Dometic Corp.*, 905 F. Supp. 535, 537 (N.D. Ill. 1995).

SPEEDTRACK'S OPPOSITION TO DEFENDANTS'
                                                    SUMMARY JUDGMENT MOTION RE RES JUDICATA

1   evaluating other issues.  *See, e.g.*, *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1325 (Fed. Cir. 2003)

2   (finding issues were the same because defendants merely "wish[ed] to buttress their case through

3   different evidence, including a new expert witness declaration"—the actions still "involve[d] the

4   same patent, the same accused products, and the same argument with respect to activation of the

5   lights on the footwear," all of which *were* actually decided in the first action).

6       Further, Defendants cannot frame the *Walmart* issue as "infringement" without reaching "far

7   too lofty a level of generality."  *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 629 (7th Cir.

8   2003).  Issue preclusion requires parties to identify "*concrete* issues" for estoppel, not an umbrella

9   category that obscures the issues of law and fact *actually* adjudicated in an earlier suit.  *Ibid.*

10  Defendants' approach would wrongly invite the Court to "equate[] issue preclusion with claim

11  preclusion," barring future questions that were never truly decided in any action.  *Ibid.*; *see also*

12  *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 543 n.1 (Fed. Cir. 1994) (describing the doctrine of

13  equivalents as a distinct "issue," not an argument in support of a broader issue).  Defendants are

14  notably silent in offering any justification for such a novel methodology.[19]

### 2. Defendants Cannot Show That The Doctrine Of Equivalents Was "Actually Litigated"

16

17      It is difficult to understand how an "equivalents" theory *never* asserted (because it was

18  *precluded*) was actually litigated in that prior case.  Defendants' argument ignores a simple truth:

19  when Endeca and Walmart had an opportunity to litigate the doctrine of equivalents, they refused to

20  do so and instead resisted its adjudication.  Their success cannot be squared with Defendants'

21  contention that these issues were somehow "actually litigated."

22

---

[19] Defendants invoke the unpublished disposition in *Reese v. Verizon Cal., Inc.*, 498 F. App'x 980 (Fed. Cir. 2012).  (Mot. 23). Defendants fail to mention, however, that the case involved the effects of a *stipulated judgment or consent decree*, and it was "undisputed" that the same issue was presented in each case.  498 F. App'x at 981, 983.  Nowhere did *Reese* (without saying so) jettison the rule that the same issues of fact and law must be identified in each proceeding before estoppel will attach.  Further, in *Home Diagnostics, Inc. v. Lifescan, Inc.*, 120 F. Supp. 2d 864, 868 (N.D. Cal. 2000) (Mot. 23 n. 14), unlike this case, both issues of literal infringement and doctrine of equivalents were adjudicated in the first lawsuit.  *Vigil v. The Disney Co.*, 2003 WL 22016805 (N.D. Cal. 2003) is also inapplicable here, because the court applied *res judicata* to bar a claim, which, unlike this case, could have brought in the first action, and which involved the same product and the same parties as in the first action.

Defendants insist that "SpeedTrack cannot now relitigate the issue of infringement, by saying that the missing element was in fact present under the doctrine of equivalents."  (Mot. 24-25).  But this proves *SpeedTrack's* point, not Defendants'.  The Court's ruling on "category descriptions" was a ruling based on *literal* infringement.  The Court did say that "Endeca software does not infringe because it does not meet the 'category description' limitation of the asserted claims." (Mot. 24).  That ruling merely sets up the distinct inquiry at issue now: does Endeca's software have the *equivalent* of that missing claim element?  "[A]ny analysis of infringement under the doctrine of equivalents *necessarily* deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim."  *Ethicon*, 149 F.3d at 1317; *see also Nystrom*, 580 F.3d at 1287 (Rader, J., concurring) ("The doctrine of equivalents, by definition, acknowledges that a specific claim limitation is not expressly found in the accused product or process.").  Defendants' theory only highlights why a decision on one theory will not preclude a decision on the other.

In fact, Defendants again prove *SpeedTrack's* point in focusing on the rule that infringement determinations traditionally ask "whether every claim limitation, *or its equivalent*, is found in the accused device."  (Mot. 23).  This deliberate use of the *disjunctive* illustrates that "equivalents" are present when "claim limitations" are *not* present.  Thus a decision limited to literal infringement will not necessarily resolve any "actually litigated" issues of fact or law for the doctrine of equivalents.

### 3. Defendants Have Not Demonstrated Any Reason For A Court To Exercise Its Discretion To Apply Collateral Estoppel On These Facts

Even when all its elements are satisfied, collateral estoppel is not mandatory.  The doctrine involves an element of discretion:  because "issue preclusion is premised on principles of fairness," courts have "some discretion" to apply or withhold the doctrine.  *In re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994); *Title v. INS*, 322 F.2d 21, 24 (9th Cir. 1963).  There are multiple reasons not to apply the doctrine in this case even were all its elements present (which they are not).

First, Defendants carry the burden to show that the methods performed by the Defendants are "essentially the same" as those performed by Walmart and Endeca in the *Walmart* action, *Foster*, 947 F.2d at 480; *Young Eng'rs, Inc.*, 721 F.3d at 1316, and that it would be fair to impose estoppel here.  (*See* Para. 10 in Section III., *supra*).  Their motion does not meet either burden.  Second,

SpeedTrack's actions do not justify a universal ban to preclude any litigation over this key issue—one concerning the practical vitality of this important, and valid, patent.  Third, SpeedTrack's earlier inability to raise the doctrine of equivalents ultimately prejudiced itself, but no one else.  The integrity of the judicial system is not at risk when courts address *distinct* issues and conclude (based on that new issue) that infringement under the doctrine of equivalents was proven here even though literal infringement was not proven before.  (The issues, after all, are mutually exclusive *by definition*.)  And finally, these Defendants could have followed Endeca in seeking to resolve the entire controversy together with the *Walmart* defendants, but elected against it—and the *Walmart* defendants deliberately *resisted* efforts to seek global repose on this issue: while they had every opportunity to litigate infringement under the doctrine of equivalents, they instead asserted new arguments at the last minute, and opposed reasonable efforts to press for a definitive disposition on these questions.  There is nothing unfair about asking new Defendants to litigate—for the very first time—these critically important questions.

In sum, if Defendants wish to use SpeedTrack's intellectual property without their permission (and without even the slightest compensation), they should be prepared to explain why their activity does not constitute infringement under an issue (the doctrine of equivalents) that no court, at any level, has ever entertained in any substantive way.  Collateral estoppel is designed to put an end to litigation over *decided* questions, not forever shield unresolved issues of law and fact.  Defendants may wish to recast the earlier suit into something it was not, but the truth remains that the doctrine of equivalents is its own issue, and no court has ever resolved it.  This is not an appropriate candidate for the proper use of collateral estoppel.

## V.   CONCLUSION

Defendants' motion should be denied.

DATED:  January 8, 2014

RESPECTFULLY SUBMITTED,

MCKOOL SMITH HENNIGAN, P.C.

By     */s/ Alan P. Block*
                    ALAN P. BLOCK
ATTORNEYS FOR PLAINTIFF,
SPEEDTRACK, INC.

25

1

**CERTIFICATE OF SERVICE**

2

3         The undersigned hereby certifies that a true and correct copy of the above and foregoing

4    document has been served on January 8, 2014, to all counsel of record who are deemed to have

5    consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will

6    be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

7

8                                                                    _____*/s/ Yoshie Botta*_____
                                                                              Yoshie Botta
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. C-07-3602 PJH                          SPEEDTRACK'S OPPOSITION TO DEFENDANTS'
                                                SUMMARY JUDGMENT MOTION RE RES JUDICATA