1  JOSHUA J. POLLACK (SBN 215922)
   LARY ALAN RAPPAPORT (SBN 087614)
2  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
3  Los Angeles, CA  90067-3206
   Telephone: (310) 557-2900
4  Facsimile: (310) 557-2193
   jpollack@proskauer.com
5  lrappaport@proskauer.com

6  STEVEN M. BAUER (Admitted *Pro Hac Vice*)
   COLIN G. CABRAL (Admitted *Pro Hac Vice*)
7  JOEL CAVANAUGH (Admitted *Pro Hac Vice*)
   BRENDAN S. COX (Admitted *Pro Hac Vice*)
8  PROSKAUER ROSE LLP
   One International Place
9  Boston, MA 02110
   Telephone: (617) 526-9600
10 Facsimile: (617) 526-9899
   sbauer@proskauer.com
11 ccabral@proskauer.com
   jcavanaugh@proskauer.com
12 bcox@proskauer.com

13 **Attorneys for Defendants**
   **OFFICE DEPOT, INC., CDW CORP.,**
14 **NEWEGG INC., and PC CONNECTION, INC.**

15

16                 UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18

19 SPEEDTRACK, INC.,                    Case No. CV 07-3602 PJH

20                        Plaintiff,    **DEFENDANTS' REPLY IN SUPPORT**
                                        **OF MOTION FOR SUMMARY**
21          vs.                         **JUDGMENT THAT PLAINTIFF'S**
                                        **INFRINGEMENT CLAIMS ARE**
22                                      **BARRED BY RES JUDICATA, THE**
                                        **KESSLER DOCTRINE, AND**
23 OFFICE DEPOT INC., et al.,           **COLLATERAL ESTOPPEL**

24                        Defendants.   Date: TBD*
                                        Time: TBD*
25                                      Court: Courtroom 3, 3rd Floor
                                        Judge:  Hon. Phyllis J. Hamilton
26
                                        *Subject to determination by the Court. *See*
27                                      Dkt. 94.

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    COLLATERAL ESTOPPEL PRECLUDES SPEEDTRACK FROM RE-LITIGATING THE ISSUE OF INFRINGEMENT...................................................................3

    A.    The Collateral Estoppel Effect of the Court's Final Judgment in the *Walmart* Case Precludes the *Entire* Issue of Infringement, Including the Doctrine of Equivalents Argument that SpeedTrack Seeks to Advance Here........................................................................................................4

    B.    Principles of Fairness Dictate that Collateral Estoppel  Should Be Applied Here........................................................................................................7

III.   SPEEDTRACK'S INFRINGEMENT CLAIMS ARE  BARRED BY RES JUDICATA ..8

    A.    SpeedTrack Fails to Meaningfully Refute the Customers' Showing of Privity........................................................................................................8

    B.    SpeedTrack Misconstrues the "Same Transactional Facts"  Requirement of Res Judicata .......................................................................................10

IV.   SPEEDTRACK FAILS TO DEMONSTRATE THAT THE KESSLER DOCTRINE SHOULD NOT APPLY HERE..........................................................................13

V.    CONCLUSION..............................................................................................15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4    *Acumed LLC v. Stryker Corp.*,
       525 F.3d 1319 (Fed. Cir. 2008)...................................................................8

5    *Allen v. McCurry*,
       449 U.S. 90 (1980).......................................................................................7
6

7    *Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
       352 F. Supp. 2d 1119 (C.D. Cal. 2005) ......................................................5

8    *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
       672 F.3d 1335 (Fed. Cir. 2012)..............................................................3, 11
9

10   *Aspex Eyewear, Inc. v. Zenni Optical, Inc.*,
       713 F.3d 1377 (Fed. Cir. 2013).....................................................................3

11   *Dana v. E.S. Originals, Inc.*,
       342 F.3d 1320 (Fed. Cir. 2003).....................................................................4
12

13   *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
       149 F.3d 1309 (Fed. Cir. 1998).....................................................................5

14   *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
       93 F.3d 1572 (Fed. Cir. 1996).......................................................................5
15

16   *General Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc.*,
       101 F.2d 178 (4th Cir. 1939) ......................................................................14

17   *In Re Freeman*,
       30 F.3d 1459 (Fed. Cir. 1994).......................................................................7
18

19   *Jet, Inc. v. Sewage Aeration Sys.*,
       223 F.3d 1360 (Fed. Cir. 2000)...................................................................10

20   *Kamilche Co. v. U.S.*,
       53 F.3d 1059 (9th Cir. 1995) ...............................................................4, 5, 7
21

22   *Kessler v. Eldred*,
       206 U.S. 285 (1907)..................................................................................2, 9

23   *Lawlor v. Nat'l Screen Serv. Corp.*,
       349 U.S. 322 (1955)....................................................................................12
24

25   *Molinaro v. American Tel. and Tel. Co.*,
       460 F. Supp. 673 (E.D. Pa. 1978) ..............................................................14

26   *Nystrom v. Trex Co., Inc.*,
       580 F.3d 1281 (Fed. Cir. 2009)...................................................1, 3, 10, 11
27

28   *Pall Corp. v. Fisher Scientific Co.*,
       962 F. Supp. 210 (D. Mass. 1997) ...............................................................5

*Pfaff v. Wells Electronic, Inc.*,
   5 F.3d 514 (Fed. Cir. 1993) ........................................................................5

*Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*,
   232 U.S. 413 (1914).............................................................................13, 14

*Solex Laboratories, Inc. v. Butterfield*,
   202 F. Supp. 461 (D. Or. 1961) ................................................................14

*Sulzer Textil A.G. v. Picanol N.V.*,
   358 F.3d 1356 (Fed. Cir. 2004)...................................................................5

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)....................................................................................9

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
   474 F.3d 1298 (Fed. Cir. 2007)...................................................................9

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA*,
   617 F.3d 1296 (Fed. Cir. 2010)...................................................................3

*Westwood Chem. Inc. v. Molded Fiber Glass Body Co.*,
   380 F. Supp. 517 (N.D. Ohio 1973)....................................................13, 15

*Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n.*,
   721 F.3d 1305 (Fed. Cir. 1983)............................................................10, 12

*Zip Dee, Inc. v. Dometic Corp.*,
   905 F. Supp. 535 (N.D. Ill. 1995) ...............................................................5

# I.     INTRODUCTION

SpeedTrack's opposition underscores that SpeedTrack's infringement claims against the named Defendants (the "Endeca Customers" or "Customers") are barred by collateral estoppel, *res judicata*, and the *Kessler* doctrine.

First, SpeedTrack fails to cite *any* case in which a patent holder, after fully litigating and losing on the issue of infringement, was permitted to re-litigate the same infringement claim against the same accused technology, simply by suing other users of that technology <u>or</u> by asserting an alternative argument regarding infringement.  Of course, if a patent holder could, after losing an infringement case, just turn around and sue another party for its use of the same technology under a "different" infringement theory, cases permitting the "second bite at the apple" would be legion.  SpeedTrack's failure to cite *any* case to support its position should be no surprise – the doctrines of collateral estoppel, *res judicata*, and *Kessler v. Eldred* bar a patent holder from bringing repetitive and duplicative infringement suits against the same *product*.

Second, as to the facts, SpeedTrack fails to identify any genuine issue of *material* fact that would prevent summary judgment here.  There is no question of fact as to whether all of the Endeca Customers use non-descriptive, numeric "dimension value identifiers" or "DVAL_IDs" when they use the Endeca software.  That is, there is no question that the Endeca Customers do the same thing that was dispositive of non-infringement in the *Walmart* case.  Whether or not the entire software package is identical in each case, or whether there are "unique" aspects of each Endeca Customers' implementation of "different versions" of the Endeca software, or whether the Customers use their "own hardware" and "unique data," is simply irrelevant because the *material* fact here is that the Endeca software, as implemented by each Customer, uses non-descriptive DVAL_IDs.  Under the Federal Circuit's decision in *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281 (Fed. Cir. 2009), these purportedly "unique" aspects of the Endeca Customers' implementation of the software are irrelevant to the preclusion analysis, because they are unrelated to the material, dispositive issue – the "category descriptions" claim limitation that was determinative in the *Walmart* case.  When SpeedTrack's opposition is stripped of such

1   immaterial details, all that remains is the undisputed fact that the "category description" element

2   is identical, making the issue of preclusion ripe for resolution on summary judgment.

3        Third, as to collateral estoppel, SpeedTrack's concession that collateral estoppel bars it

4   from pursuing a "literal" infringement argument against the Endeca Customers here is fatal to its

5   case.  Collateral estoppel precludes *all* re-litigation of an entire issue – including arguments that

6   the losing party did *not* make regarding that issue in the first case.  Although SpeedTrack argues

7   in its opposition that *"infringement under the doctrine of equivalents"* is a different *issue* from

8   "infringement," SpeedTrack fails to cite *any* case in which a different infringement *theory* was

9   treated as a different "issue" for issue preclusion purposes.

10       Fourth, as to *res judicata,* SpeedTrack seeks to misdirect the Court when it argues

11  (wrongly) in its opposition that (a) the Endeca Customers are not in privity with Endeca and

12  Walmart, and (b) the "transactional facts" here are not the same as in the *Walmart* action.  When

13  this case was stayed in 2007, every involved party – including SpeedTrack, Endeca, and the

14  Endeca Customers – understood that Endeca had indemnified the Endeca Customers in this case,

15  and that Endeca had intervened in the *Walmart* case to protect all of its customers against similar

16  suits by SpeedTrack.  Moreover, SpeedTrack fails to raise any genuine issue regarding the

17  *material* transactional facts for *res judicata*, namely: (1) the Endeca technology itself has been

18  fully adjudicated to be non-infringing, and (2) the Endeca Customers sued here have

19  implemented the same non-infringing Endeca software, using non-infringing, non-descriptive,

20  numeric identifiers.  Under *Nystrom*, SpeedTrack cannot avoid the application of *res judicata*

21  simply by pointing to immaterial differences in the technology that are unrelated to the Court's

22  non-infringement ruling in the *Walmart* case.

23       Finally, SpeedTrack does not meaningfully dispute the fact that, in *Kessler v. Eldred*, 206

24  U.S. 285 (1907), the Supreme Court carved out an exception to the standard rules of privity for

25  *res judicata* when it held that in the *patent* context, the non-infringing *product* is the thing that

26  binds the patent holder to his or her loss on infringement in a prior case.  SpeedTrack's argument

27  against the *Kessler* doctrine quibbles with the question of whether *Kessler* should be labeled as a

28  collateral estoppel case or a *res judicata* case.  But this misses the substantive point of *Kessler*: a

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Case No. 07-cv-03602-PJH

final determination that a manufacturer's product does not infringe bestows that product with the status of a "noninfringement," and that status remains with that particular product when it is used by the manufacturer's customers.

SpeedTrack's infringement claims against the Endeca Customers should be barred.  No law permits otherwise.

## II.   COLLATERAL ESTOPPEL PRECLUDES SPEEDTRACK FROM RE-LITIGATING THE ISSUE OF INFRINGEMENT

Collateral estoppel bars this lawsuit because the issue decided in the *Walmart* case is identical to the issue SpeedTrack seeks to re-litigate here:

(1) The issue of infringement was fully and fairly litigated in the *Walmart* case, and was finally resolved by the Court's entry of final judgment; and

(2) The Endeca Customers' implementation of the Endeca technology, which is at the core of SpeedTrack's infringement claims here, uses the same numeric, non-descriptive DVAL_IDs that the Court determined in the *Walmart* case do *not* meet the "category descriptions" limitation of SpeedTrack's patent.

"If … the accused device of the second suit remains unchanged with respect to the corresponding claim limitations at issue in the first suit, then [the patentee] has no remaining avenue to pursue his claims." *Nystrom*, 580 F.3d at 1285-86;[1] *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA*, 617 F.3d 1296, 1312 (Fed. Cir. 2010) (finding identity of issues for purposes of collateral estoppel where second lawsuit accused same technology as first lawsuit)  The collateral estoppel effect of the final judgment in the *Walmart* case precludes SpeedTrack from re-litigating the *issue of infringement* here – regardless of how

---

[1] Although the Federal Circuit in *Nystrom* characterized its analysis as falling under principles of *claim* preclusion, it has since noted that the reasoning in *Nystrom* is equally applicable in the *issue* preclusion context.  *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343-1344 (Fed. Cir. 2012) ("[T]he principle that the [*Nystrom*] court applied was that when a party that has had a full and fair opportunity to litigate an issue and has lost on that issue, it may not relitigate that issue in a later case."); s*ee also Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013) (applying issue preclusion to infringement claims under *Nystrom*, among other cases).

---

1  SpeedTrack attempts to show that the accused Endeca technology being used by Endeca's

2  Customers contains "category descriptions," either literally or under the doctrine of equivalents.

3      **A.**    **The Collateral Estoppel Effect of the Court's Final Judgment in the *Walmart***

4            **Case Precludes the *Entire* Issue of Infringement, Including the Doctrine of Equivalents Argument that SpeedTrack Seeks to Advance Here**

5         SpeedTrack's argument against the application of collateral estoppel rests on a single

6  premise: that SpeedTrack's "new" and specific infringement theory (under the doctrine of

7  equivalents) should be considered as an "issue" distinct from the ultimate question of

8  infringement on which SpeedTrack already lost.  But whether a claim element is present under

9  the "doctrine of equivalents" is not a distinct "issue" for collateral estoppel purposes – rather, it

10  is an alternative *argument* that a patentee may advance in an effort to prevail on *the ultimate*

11  *issue of infringement.  See Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1325 (Fed. Cir. 2003)

12  (affirming district court's grant of summary judgment of collateral estoppel as to the "*issues* of

13  *infringement* and patent validity," and rejecting appellee's argument that new infringement-

14  related evidence in second case was sufficient to create a different "issue" that could survive

15  preclusive effect of judgment in first case) (emphasis added).

16         When a court makes a final determination on an "ultimate issue" (like infringement or

17  validity), "any *contention* that is necessarily inconsistent with a prior adjudication of a material

18  and litigated issue ... *is subsumed in that issue and precluded by the effect of the prior judgment*

19  *as collateral estoppel*."  *Kamilche Co. v. U.S.*, 53 F.3d 1059, 1063 (9th Cir. 1995) (citing 1B

20  Moore's Federal Practice ¶ 0.443[2]) (emphasis added)).  As the Ninth Circuit noted in *Kamilche*,

21  in the collateral estoppel context, "once an issue is raised and determined, it is the entire issue

22  that is precluded, not just the particular arguments raised in support of it in the first case."  *Id.*

23  ("The United States cannot now argue adverse possession – or any other *legal theory* – that is

24  inconsistent with the [prior] court's ruling that [plaintiff] owns the disputed property.")

25  (emphasis added).  Further to this point, the *Kamilche* court relied on the Restatement (Second)

26  of Judgments, which provides that "[i]f the party against whom preclusion is sought did in fact

27  litigate an issue ... and suffered an adverse determination ... new arguments may not be presented

28

1   to obtain a different determination of that issue."  53 F.3d at 1063 (quoting Restatement (Second)

2   of Judgments § 27 (1982)).

3          Tellingly, SpeedTrack fails to cite a single case in which a court treated a patentee's

4   argument for infringement under the doctrine of equivalents as a distinct "issue" that could avoid

5   issue preclusion.[2]  Nor does SpeedTrack cite any case law that calls into question the reasoning

6   in the cases cited in the Endeca Customers' opening brief, which clearly establish that the

7   collateral estoppel effect of a final adjudication of the ultimate issue of validity precludes *all*

8   validity arguments, even those that the losing party did not raise in the first case.  *See, e.g.,*

9   *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1120, 1124-1126 (C.D.

10  Cal. 2005) (holding that defendants' new anticipation and obviousness arguments were barred

11  under collateral estoppel, stating that plaintiff "cannot now resurrect and relitigate the issue [of

12  validity] in this lawsuit, even if there are new arguments that [plaintiff] wants to raise that were

13  not made in the parties' prior lawsuit."); *Zip Dee, Inc. v. Dometic Corp.*, 905 F. Supp. 535, 537-

14  538 (N.D. Ill. 1995) (holding that collateral estoppel barred defendant from raising new "on-

15  sale" and "public-use" validity defenses in second case); *see also Pall Corp. v. Fisher Scientific

16  Co.*, 962 F. Supp. 210, 213 (D. Mass. 1997) ("Even assuming that [defendant] now seeks to

17  invalidate the patent on different grounds than those asserted … in the [prior] action, the issue

18  [of validity] remains the same.").  Infringement, like validity, is one of the "ultimate" issues in a

19

20  _____

21  [2] SpeedTrack selectively quotes inapplicable Federal Circuit decisions in which the words
    "issue" or "claim" were used in contexts completely unrelated to issue preclusion.  *See* Opp'n at

22  21, *citing Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356 (Fed. Cir. 2004) (vacating grant of
    motion *in limine* precluding evidence on doctrine of equivalents); *Pfaff v. Wells Electronic, Inc.*,

23  5 F.3d 514, 520 (Fed. Cir. 1993) (reversing summary judgment of non-infringement based on
    question of fact as to functionality of accused product); *Ethicon Endo-Surgery, Inc. v. U.S.*

24  *Surgical Corp.*, 149 F.3d 1309, 1318 (Fed. Cir. 1998) (affirming summary judgment of non-
    infringement and recognizing that literal infringement and infringement under doctrine of

25  equivalents are "viable alternative" "*theories*" for infringement); *Ethicon Endo-Surgery, Inc. v.*

26  *U.S. Surgical Corp.*, 93 F.3d 1572, 1583 (Fed. Cir. 1996) (finding that district court did not
    provide sufficient written findings to support summary judgment of non-infringement as to the

27  doctrine of equivalents).

28

_____

1   patent case.  And infringement, like validity, may have different theories and arguments, but

2   when a party loses on one of these *issues*, it has lost on all the theories it might have raised.

3        SpeedTrack also suggests that the Court denied its motion to amend its infringement

4   contentions in the *Walmart* case because the Court recognized that the doctrine of equivalents, as

5   to the "category description" claim limitation, was an "issue" that SpeedTrack would raise in

6   another case.  This argument, however, turns the Court's order denying SpeedTrack's motion on

7   its head.  (*See Walmart* Dkt. 357, Order Denying Mot. for Leave to Amend.)  When this Court

8   rejected SpeedTrack's effort to add a new infringement theory in the *Walmart* case, it did so

9   because this District's Patent Local Rules *required* SpeedTrack to timely disclose in its final

10  infringement contentions "*[w]hether each element of each asserted claim is claimed to be*

11  *literally present **or present under the doctrine of equivalents** in the Accused Instrumentality.*"

12  *See* N.D. Cal. Pat. L. R. (pre-2009 version) 3-1, 3-6 (emphasis added).  SpeedTrack sought to

13  add the doctrine of equivalents theory only after a hearing on Endeca and Walmart's motion for

14  summary judgment of non-infringement (in November 2011), and six months after Endeca and

15  Walmart took the position that the "category descriptions" limitation was not met by the solely

16  numeric DVAL_IDs (in June 2011).  Moreover, SpeedTrack's motion to amend its infringement

17  contentions was filed *three years* after SpeedTrack served its final infringement contentions on

18  Endeca and Walmart.  (*Walmart* Dkt. 349, Plaintiff SpeedTrack, Inc.'s Mot. for Leave to Amend

19  its Final Infringement Contentions.)

20       Contrary to SpeedTrack's argument, the Court denied SpeedTrack's motion because

21  SpeedTrack's six-month delay in filing its motion to amend "constitute[d] a lack of diligence in

22  seeking to amend."  (*Walmart* Dkt. 357, Order Denying Mot. for Leave to Amend Infringement

23  Contentions, at 2.)  The Court's order further noted that "in addition to plaintiff's lack of

24  diligence," allowing SpeedTrack to raise its "altered *theory* of infringement" might require

25  discovery to be re-opened, and would give "new grounds" for another motion for summary

26  judgment before trial.  *Id.*  (emphasis added).  Certainly, the Court was not suggesting that it was

27  simply deferring the issue of infringement on SpeedTrack's alternate theory for resolution in a

28  later case.

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Case No. 07-cv-03602-PJH

1  The law of collateral estoppel is clear: when an issue (such as infringement) is litigated

2  and finally adjudicated, every *argument* of the losing party on that issue falls within the scope of

3  collateral estoppel, regardless of whether those arguments were substantively raised or not.

4  *Kamilche*, 53 F.3d at 1063.  Indeed, if SpeedTrack had never mentioned its doctrine of

5  equivalents argument in the *Walmart* case, collateral estoppel would still preclude SpeedTrack

6  from raising it now.  It is therefore irrelevant to the collateral estoppel analysis that SpeedTrack

7  filed an unsuccessful motion attempting to raise the doctrine of equivalents argument in the

8  *Walmart* case.

9    **B.**  **Principles of Fairness Dictate that Collateral Estoppel**
10       **Should Be Applied Here**

11   SpeedTrack closes its collateral estoppel argument with an appeal to fairness, asserting

12 that even if all three elements of collateral estoppel were met here (they are), it somehow would

13 still be "unfair" for the Court to preclude SpeedTrack from re-litigating the settled issue of

14 infringement.  But, SpeedTrack's argument merely consists of a re-hashing of SpeedTrack's

15 arguments against collateral estoppel, only now framed alternatively as a plea for "fairness."

16   Moreover, any considerations of "fairness" weigh in favor of Endeca and the Endeca

17 Customers, who have had to defend against a lawsuit that is solely intended to drive up the cost

18 of litigation in an effort to force some form of settlement.  Collateral estoppel serves to "relieve

19 parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

20 preventing inconsistent decisions, encourage reliance on adjudication."  *Allen v. McCurry*, 449

21 U.S. 90, 94 (1980).  SpeedTrack provides no "reason to doubt the quality, extensiveness, or

22 fairness of procedures followed in the prior litigation," and points to no circumstances that

23 otherwise would suggest that the Court should decline to apply collateral estoppel for reasons of

24 fairness.  *See In Re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994).

25   SpeedTrack had a full and fair opportunity to litigate the issue of infringement in the

26 *Walmart* case.  In every respect, fairness dictates that collateral estoppel should be applied here.

27

28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Case No. 07-cv-03602-PJH

## III.   SPEEDTRACK'S INFRINGEMENT CLAIMS ARE BARRED BY RES JUDICATA

SpeedTrack simply misapplies the law of *res judicata*.  Not only does SpeedTrack argue that "[t]he absence of common parties and identical claims renders *res judicata* inapplicable," (Opp'n at 1), but it goes so far as to argue that "even a suit against *Walmart* itself for identical *post-judgment* activity – operating the identical software on the identical website – would escape *res judicata*."  (Opp'n at 3.)  Of course, SpeedTrack cites no authority for the proposition that a plaintiff who lost a patent infringement suit against a product supplier and its customer can prosecute a new action against a different customer for the same, previously-accused conduct that was determined to be non-infringing.

When this Court entered final judgment of non-infringement in the *Walmart* case, SpeedTrack was "thereafter bound" to respect the Court's finding that a customer's identical use of the Endeca software does not infringe.  *See, e.g., Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).

### A.   SpeedTrack Fails to Meaningfully Refute the Customers' Showing of Privity

In its opposition, SpeedTrack makes a 180-degree turn from what it told the Court in the June 20, 2013 Joint Case Management Conference Statement.  There, SpeedTrack stated that it expected that discovery regarding the relationship between Endeca and the Endeca Customers would establish privity, because it would "demonstrate that Endeca adequately and fully represented Defendants' interests in the earlier claim construction proceedings and that this Court's prior rulings, modified by the Federal Circuit's pronouncements on appeal, will apply." (Joint Case Mgmt. Conf. Stmt., Dkt. 59, at 7.)  After receiving the discovery that confirms this, SpeedTrack *now* argues that although Endeca defended its customers under its indemnification obligations, there is not *sufficient* privity between the Endeca Customers and Endeca to bind the parties here to the Court's non-infringement ruling in the *Walmart* case.

SpeedTrack tries to explain its flip-flop by wrongly suggesting that during the hearing on the motion to dismiss, the Endeca Customers "urged the Court to find privity and bar SpeedTrack's claims on the basis of only [the written indemnification agreements]."  (Opp'n at

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Case No. 07-cv-03602-PJH

1   13, n.1.)  In fact, consistent with the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S.

2   880 (2008), the Endeca Customers argued that the Court could conclude that they were

3   adequately represented in the *Walmart* case, even *without* considering the indemnification

4   agreements.  (Dkt. 98-2, Cox Decl. in Support of Mot., Ex. B, Nov. 6, 2013 Hr'g. Tr. at 7:6-10.)

5        SpeedTrack now relies on one discrete, boilerplate clause in the licensing agreements

6   between the Endeca Customers and Endeca to argue that these agreements *disclaim* any

7   representative role between Endeca and each of its customers.  (Opp'n at 13.)  This form

8   language is not material to the evaluation of privity.  Rather, the undisputed facts demonstrating

9   Endeca's representation of the Customers' interests in the *Walmart* case clearly establish privity.

10  Indeed, the Federal Circuit has noted that "privity exists when the parties are so closely related

11  and their interests so nearly identical that it is fair to treat them as the same parties for the

12  purposes of determining the preclusive effect of the first judgment."  *Transclean Corp. v. Jiffy*

13  *Lube Int'l, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007).

14       In the patent context, there is no clearer alignment of interests than between those of (a) a

15  product supplier defending its product, and the use of that product, against claims of

16  infringement, and (b) customers of the product supplier defending against claims of infringement

17  due to their use of the same product.  *See, e.g., Kessler*, 206 U.S. at 289 ("No one wishes to buy

18  anything if with it he must buy a law suit.").  SpeedTrack's argument that Endeca could not have

19  understood that it was "representing" its Customers in the *Walmart* action (Opp'n at 14) is

20  nonsense, and is directly refuted by the filings in this case demonstrating that the Customers –

21  *and Endeca through its control of the Customers' defense* – viewed Endeca as the "true

22  defendant" representing their interests in both this case and the *Walmart* action.  (*See, e.g.,* Dkt.

23  8, Mot. to Stay at 4 ("If Endeca succeeds in the [*Walmart*] action against SpeedTrack, this

24  second case will be for naught.  On the other hand, if SpeedTrack succeeds in its case against

25  Endeca, it is highly likely the customer suits will settle quickly, because the primary issue

26  remaining will be a valuation of damages."); *id.* at 7 ("Endeca is the true defendant, as they

27  developed the technology at issue and provided it to the customer Defendants for use on their

28  retail websites, and is defending the same technology in the Wal-Mart case.").)

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Case No. 07-cv-03602-PJH

1    At bottom, the undisputed facts before the Court clearly shows that Endeca and the

2  Customers are in privity because Endeca "adequately represented" the Customers' interests in

3  the *Walmart* case.  These facts, which are unchallenged, at least include:

4    (a) Endeca's intervention in the *Walmart* case, which Endeca stated was necessary to

5  defend its technology in view of SpeedTrack's perceived intention to "sue each of Endeca's

6  customers for patent infringement" (*Walmart* Dkt. 45, Endeca's Mot. to Intervene, at 1);

7    (b) SpeedTrack's infringement claims in this case, directed to each Endeca Customer's

8  use of the Endeca product;

9    (c) the licensee-licensor relationship between Endeca and the Customers here (which

10  SpeedTrack does not dispute); and

11    (d) Endeca's indemnification and control of the defense of the Customers here (which

12  SpeedTrack does not dispute).

13    **B.    SpeedTrack Misconstrues the "Same Transactional Facts"**
          **Requirement of Res Judicata**
14

15    SpeedTrack's argument that this case does not involve the same nucleus of transactional

16  facts as the *Walmart* case mischaracterizes both the law and the *material* facts.

17    For the determination of *res judicata*, "a common set of transactional facts is to be

18  identified 'pragmatically' … [and] courts have defined 'transaction' in terms of a 'core of

19  operative facts,' the 'same operative' facts, or the 'same nucleus of operative facts,' and 'based

20  on the same, or nearly the same factual allegations."  *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d

21  1360, 1363 (Fed. Cir. 2000) (internal citations omitted).  For purposes of *res judicata* in patent

22  cases, "where the alleged infringer prevails, the accused devices have the status of

23  noninfringements, and the defendant acquires the status of a noninfringer to that extent."  *Young*

24  *Eng'rs, Inc. v. U.S. Int'l Trade Comm'n.*, 721 F.3d 1305, 1316-1317 (Fed. Cir. 1983).

25  "Colorable changes in an [alleged] infringing device or changes unrelated to the limitations in

26  the claim of the patent would not present a new cause of action."  *Nystrom*, 580 F.3d at 1285.

27  The use of the same non-infringing product in the same material, non-infringing way involves

28  the same nucleus of transactional facts.

---

1    SpeedTrack's reliance on *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335

2    (Fed. Cir. 2012), for the proposition that its infringement claims here "were not asserted and

3    could not have been asserted" in the *Walmart* action, is misplaced.  Importantly, *Aspex* addressed

4    whether a patent holder's claims of infringement in a second case were barred by *res judicata*

5    where the second case involved a new and *materially different* product, the "New Design," that

6    did not exist at the time of the first lawsuit.  672 F.3d at 1340.  Here, there is no such "New

7    Design."  Rather, the "claim" SpeedTrack asserts in this case is the same "claim" resolved in the

8    *Walmart* action – specifically, whether an Endeca customer's use of the materially same Endeca

9    product, which uses the same non-descriptive, numeric identifiers as DVAL_IDs, infringes the

10   '360 patent.[3]

11   There is no genuine dispute that in this case SpeedTrack is "attempting to prove

12   infringement of the same claim limitations as to the same feature of the accused devices" that

13   this Court has already determined not to infringe.  *Nystrom*, 580 F.3d at 1285-1286.  Indeed, the

14   Endeca product used by each Customer to provide search functionality on its website functions

15   identically *with regard to the relevant "category description" claim limitations* as that

16   determined not to infringe in the *Walmart* action.  This is precisely what *Nystrom* bars.  *Id.*  It

17   does not matter, as SpeedTrack argues, that the Customers "have not shown that such numbers

18   are *always* used, that any used numbers are *exactly* the same, or that any identical numbers were

19   used in the *Walmart* action" (Opp'n at 19), because there is no dispute that the Endeca product

20   uses non-descriptive *numbers*, and SpeedTrack cites no evidence to the contrary.  The actual

21   numbers used are immaterial.  *See, e.g., Nystrom*, 580 F.3d at 1286.[4]

22   _____

23   [3] SpeedTrack's Amended Complaint underscores the applicability of *res judicata* here because it
     expressly alleges infringement by each customer through their use of "the Endeca Information

24   Access Platform, to provide [website] searching functionality."  (Dkt. 61, First Amended and
     Supplemental Complaint at ¶¶ 17-19 (Office Depot); ¶¶ 32-34 (CDW); ¶¶ 47-49 (Newegg); and

25   ¶¶ 62-24 (PC Connection)).

26   [4] SpeedTrack also challenges the "foundation" for the Endeca Customers' sworn declarations

27   affirming that each Customer's implementation of the Endeca system includes purely numeric
     DVAL_IDs (as demonstrated by the product records produced to SpeedTrack and submitted in

28   support of the Customers' motion), and affirming that the Customers do not change the purely

     _____

     DEFENDANTS' REPLY IN SUPPORT OF
     MOTION FOR SUMMARY JUDGMENT                                    Case No. 07-cv-03602-PJH

1        SpeedTrack argues that *res judicata* does not apply to its claims here because they are

2  directed to the Customers' use of the Endeca product "from *May 26, 2007 to June 28, 2013*,"

3  after final judgment of non-infringement in the *Walmart* action (Opp'n at 16).[5]  SpeedTrack

4  further contends that "different versions of Endeca's software, different websites, and different

5  product inventories" preclude application of *res judicata*.  (Opp'n at 18-19.)  However, both of

6  these arguments are premised on a fundamental failure to acknowledge that the *material* facts of

7  the accused "method" are the same in both cases – the Endeca software, as implemented by each

8  Customer, uses non-descriptive, numeric identifiers, just as in the *Walmart* action.  SpeedTrack

9  points to no evidence showing any *material* difference in the function, or method, performed by

10  the Endeca software as used by each Defendant that would preclude the application of *res*

11  *judicata.*

12        *Res judicata* applies here to bar SpeedTrack's claims of infringement because there is no

13  new cause of action and there is no genuine dispute that the accused "method" performed by

14  each Endeca Customer requires use of the Endeca product, which functions identically in both

15  cases with regard to the "category description" element that was dispositive of non-infringement.

16

17

18

---

19  numeric format of the DVAL_IDs.  (Opp'n at 6-7.)  SpeedTrack points out that "the file used is

20  in a non-human readable format."  *Id.*  But, as demonstrated in the comparisons of the Walmart
and Customer DVAL_IDs in the Customers' opening brief in support of the present motion

21  (Mot. at 12-13, 19), the "human readable" form of these records was precisely what SpeedTrack
relied on in support of its final infringement contentions in the *Walmart* case, including its

22  (ultimately failed) contention that the solely numeric DVAL_IDs contained the "category
descriptions" element.  (*See* Dkt. 98-3, Cox Decl. in Support of Mot., Ex. C, at 4-5, 32.)  The

23  "human readable" form of these records demonstrates that the accused products in the two cases
are the same for preclusion purposes (in that they contain numeric DVAL_IDs), and provides

24  ample "foundation" for the Customer declarations.

25  [5] In support of this argument, SpeedTrack relies, in part, on *Lawlor v. Nat'l Screen Serv. Corp.*,

26  349 U.S. 322 (1955), but SpeedTrack also fails to acknowledge that the Federal Circuit has
interpreted *Lawlor* as applying only where the accused acts in the second case are performed

27  after the first judgment *and are of a materially different nature* (*i.e.*, involve a materially
different product).  *See, e.g., Young Eng'rs,* 721 F.3d at 1316-1317.

28

---

1
2

## IV.   SPEEDTRACK FAILS TO DEMONSTRATE THAT THE KESSLER DOCTRINE SHOULD NOT APPLY HERE

3

4

5

6

7

8

9

10

11

        A similar mischaracterization of the relevant law and the material facts underlies SpeedTrack's argument against the application of the *Kessler* doctrine in this case.  SpeedTrack focuses on the question of whether *Kessler* should be labeled as a collateral estoppel or a *res judicata* doctrine (as the parties' briefing makes clear, courts have called it both).[6]  This argument, however, misses the substantive point of *Kessler*.  Regardless of which preclusion label courts have placed on it, *Kessler* held that a final determination that a manufacturer's product does not infringe gives that *product* "non-infringing" status, and that status attaches to that particular product when it is used by the manufacturer's customers, so long as the non-infringing element of the product remains unchanged.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        SpeedTrack argues that *Kessler* only applies in situations where the manufacturer sells a "standalone product," and cannot apply where the manufacturer sells one "component" that a customer uses to create a "new article," citing to *Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*, 232 U.S. 413, 419 (1914).  (Opp'n at 8-10.)  *Rubber Tire*, however, is inapplicable here.  In *Rubber Tire*, Goodyear succeeded in a first infringement suit in which Rubber Tire accused Goodyear of infringing its patent directed to a rubber tire design.  232 U.S. at 414.  In addition to manufacturing the accused tires, Goodyear also separately provided rubber to other companies that designed and manufactured their own tires.  Rubber Tire subsequently sued Doherty, who was buying rubber from Goodyear to make its own tires (and was *not* buying the previously-accused, non-infringing Goodyear tires).  *Id.* at 414-416.  Goodyear sought to enjoin the suit based on its previous defense against the asserted Rubber Tire patent.  The Supreme Court distinguished the facts of *Rubber Tire* from *Kessler* because the rubber Doherty purchased from Goodyear was not the focus of the infringement allegations in the earlier case against Goodyear (the Goodyear-designed *tire*).  Instead, the infringement suit against Doherty accused

26

27

28

---

[6] *Westwood Chem. Inc. v. Molded Fiber Glass Body Co.*, 380 F. Supp. 517, 523 (N.D. Ohio 1973), cited by SpeedTrack in its opposition, supports the Endeca Customers' argument that *Kessler* is correctly viewed as a patent-specific application of *res judicata* principles.

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Case No. 07-cv-03602-PJH

1    Doherty's specific tire design, which merely incorporated the rubber supplied by Goodyear. *Id.*

2    at 418-419.  In *Rubber Tire*, therefore, the Goodyear "component" (the rubber) that Doherty was

3    using to create its tires did not contain any element that also would render Doherty's tires non-

4    infringing.

5          Here, the Endeca software – which includes an element (solely numeric DVAL_IDs) that

6    is dispositive of non-infringement – is at the core of SpeedTrack's infringement claims against

7    each Endeca Customer.  Put differently, under *Kessler* and *Rubber Tire*, the accused Endeca

8    software *is* a "standalone" product (because, "standing alone," it is non-infringing).

9    SpeedTrack's argument is premised on the demonstrably false proposition that the Endeca

10   Customers here somehow are producing a "new" system that does *not* include the solely numeric

11   DVAL_IDs of the Endeca system.

12         SpeedTrack is also wrong to argue that the protections afforded by *Kessler* belong to

13   product manufacturers only, and that "*no court*" has permitted customers to invoke *Kessler*.

14   (Opp'n at 11.)  SpeedTrack appears to have either missed or elected to ignore the Fourth

15   Circuit's decision in *General Chem. Co. v. Standard Wholesale Phosphate & Acid Works, Inc.*,

16   101 F.2d 178 (4th Cir. 1939), which held that customers could invoke *Kessler*, because, among

17   other reasons, "if the suit against the customer may be dismissed upon the intervention and at the

18   request of the manufacturer, there is no valid reason why it may not be dismissed upon the

19   motion of the customer himself." *Id.* at 180.[7]  Consistent with the court's reasoning in *General*

20   *Chemical*, there is no practical difference between the *Kessler* doctrine as invoked by the Endeca

21   Customers or by Endeca itself.

22

23

_____

24   [7] *See also Molinaro v. American Tel. and Tel. Co.*, 460 F. Supp. 673, 675-76 (E.D. Pa. 1978)

25   ("[T]he rationale underlying the Kessler doctrine would support the assertion not only by a
     manufacturer, but also by a customer, of the preclusive effect of a prior judgment in favor of the

26   manufacturer-supplier and against the patentee."); *Solex Laboratories, Inc. v. Butterfield*, 202 F.
     Supp. 461, 463 (D. Or. 1961) ("[T]he decision in Kessler … permit[s] customers of the

27   manufacturer to assert a defense of collateral estoppel based on a previous judgment in the
     manufacturer's favor.").

28

_____

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                                  Case No. 07-cv-03602-PJH

1          Finally, SpeedTrack contends that by invoking *Kessler*, the Endeca Customers have

2    sought to enjoin SpeedTrack from proceeding with this action, but have not satisfied the

3    elements for injunctive relief.  (Opp'n at 11.)  SpeedTrack cites no cases suggesting that the

4    *Kessler* doctrine may be invoked only by parties seeking anti-suit injunctions.  In fact, cases that

5    SpeedTrack cites in support of its other arguments against the *Kessler* doctrine demonstrate that

6    *Kessler* is a well-recognized defense to infringement actions that is not limited to situations

7    where the defendants seek an anti-suit injunction.  *See, e.g., Westwood*, 380 F. Supp. at 523

8    (recognizing the "defense of res judicata" under *Kessler* in non-injunction context).

9    **V.      CONCLUSION**

10          For the reasons stated above and in their opening brief, Office Depot, Inc., CDW

11   Corporation, Newegg Inc., and PC Connection, Inc. respectfully request that the Court enter

12   summary judgment that SpeedTrack's claims are barred.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                                        Case No. 07-cv-03602-PJH

1

2 Dated: January 15, 2014                          Respectfully Submitted,

3                                                  */s/ Joel Cavanaugh*
                                                   Lary Alan Rappaport (SBN 087614)
4                                                  Joshua J. Pollack (SBN 215922)
                                                   PROSKAUER ROSE LLP
5                                                  2049 Century Park East, Suite 3200
                                                   Los Angeles, CA 90067-3206
6                                                  Telephone: (310) 557-2900
                                                   Facsimile: (310) 557-2193
7                                                  lrappaport@proskauer.com
                                                   jpollack@proskauer.com
8

9                                                  Steven M. Bauer (Admitted *Pro Hac Vice*)
                                                   Colin G. Cabral (Admitted *Pro Hac Vice*)
10                                                 Joel Cavanaugh (Admitted *Pro Hac Vice*)
                                                   Brendan S. Cox (Admitted *Pro Hac Vice*)
11                                                 PROSKAUER ROSE LLP
                                                   One International Place
12                                                 Boston, MA 02110
                                                   Telephone: (617) 526-9600
13                                                 Facsimile: (617) 526-9899
                                                   sbauer@proskauer.com
14                                                 ccabral@proskauer.com
                                                   jcavanaugh@proskauer.com
15                                                 bcox@proskauer.com

16
                                                   *Attorneys for Defendants*
17                                                 *Office Depot, Inc., CDW Corp.,*
                                                   *Newegg Inc., and PC Connection, Inc.*
18

19

20

21

22

23

24

25

26

27

28

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                                         Case No. 07-cv-03602-PJH

1

**CERTIFICATE OF SERVICE**

2

3

    The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on January 15, 2014 to all counsel of record who are deemed to have

4

consented to electronic service via the Court's CM/ECF system. Any other counsel of record will

5

be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

6

7

                                                    */s/  Joel Cavanaugh*
                                                    Joel Cavanaugh

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                                      Case No. 07-cv-03602-PJH

17