UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SPEEDTRACK, INC.,

    Plaintiff,

    v.

OFFICE DEPOT, INC., et al.,

    Defendants.
_____/

No. C 07-3602 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendants Office Depot, Inc. ("Office Depot"), CDW Corporation ("CDW"), Newegg Inc. ("Newegg"), and PC Connection, Inc. ("PC Connection") (together, "defendants") have moved for summary judgment, claiming that the patent infringement claims asserted by plaintiff SpeedTrack, Inc. ("plaintiff" or "SpeedTrack") are barred by res judicata, collateral estoppel, and/or the Kessler doctrine. The court finds that the matter is suitable for decision without a hearing, and GRANTS defendants' motion for summary judgment as follows.

**BACKGROUND**

This patent infringement case involves the same plaintiff and patent as a previous case heard by this court, SpeedTrack v. Wal-Mart (Case No. 4:06-cv-7336) ("the Wal-Mart case"). The facts of Wal-Mart are directly relevant to the present motion, so they will be briefly summarized here.

In the Wal-Mart case, SpeedTrack asserted a patent infringement claim against Wal-Mart for certain technology used in Wal-Mart's retail web site. Specifically, SpeedTrack alleged that Wal-Mart's website allowed its users to search for products by selecting pre-defined product categories, and further claimed that the technology infringed U.S. Patent No. 5,544,360 ("the '360 patent").

After the Wal-Mart complaint was filed, the company which supplied the allegedly-infringing technology to Wal-Mart's website (Endeca Technologies Inc., or "Endeca") intervened in the case. After Endeca's intervention, SpeedTrack added claims of indirect infringement (inducement of infringement and contributory infringement) against Endeca, and continued to accuse Wal-Mart of direct infringement. Incidentally, it was around this time that SpeedTrack filed the complaint in the present case, which was stayed pending final resolution of the Wal-Mart case.

The court conducted claim construction proceedings in the Wal-Mart case, and issued a claim construction order on June 19, 2008. The critical construction was of the term "category description," which the court construed as "information that includes a name that is descriptive of something about a stored file." See Wal-Mart, Dkt. 132 at 5-9.

After claim construction, Endeca filed a reexamination petition with the U.S. Patent and Trademark Office ("PTO"), which was granted. The court stayed the Wal-Mart case during the pendency of the reexamination proceedings. The present case remained stayed as well.

The PTO confirmed the patentability of SpeedTrack's claims, and the Wal-Mart case proceeded to summary judgment. Wal-Mart and Endeca moved for summary judgment of non-infringement, and the court held a hearing on the motion on November 16, 2011. As part of their summary judgment motion, Wal-Mart and Endeca presented new arguments on the term "category description," arguing that the accused product did not infringe because it did not include a "name that is descriptive of something about a stored file" but instead included a number. The court ordered additional briefing on that non-infringement argument, and during that briefing, SpeedTrack moved to amend its final infringement contentions, seeking to add an allegation that Wal-Mart and Endeca infringed the "category description" limitation under the doctrine of equivalents. The court denied SpeedTrack's motion for leave to amend, finding that SpeedTrack had actually been on notice of defendants' non-infringement argument since June 23, 2011, when defendants served a supplemental interrogatory response indicating that their software used numbers, rather

than names, and thus did not meet the patent's "category description" limitation. See Wal-Mart, Dkt. 357. The court then granted defendants' motion for summary judgment of non-infringement, based on the "category description" limitation. See Wal-Mart, Dkt. 358. SpeedTrack appealed both decisions to the Federal Circuit, which affirmed this court's denial of leave to amend and grant of summary judgment of non-infringement. See SpeedTrack v. Endeca, 524 Fed.Appx. 651 (Fed. Cir. 2013).

After the Federal Circuit issued its decision, the stay was lifted in the present case, which involves allegations of infringement against defendants Office Depot, CDW, Newegg, and PC Connection, for their use of the same Endeca search technology that was at issue in Wal-Mart.

After the stay was lifted, defendants moved to dismiss the complaint, arguing that SpeedTrack's suit was barred by (1) res judicata, or claim preclusion, (2) collateral estoppel, or issue preclusion, and/or (3) the Supreme Court's "Kessler doctrine." The court denied the motion, finding that "the issues raised by defendants require consideration of materials outside of the pleadings, and thus are more appropriately raised in a motion for summary judgment." See Dkt. 94.

Specifically, the court found that it needed to consider evidence regarding defendants' use of the accused Endeca technology before deciding whether SpeedTrack's claims were barred. At the hearing on defendants' motion to dismiss, the court specifically asked SpeedTrack's counsel if they "needed any other discovery," to which counsel replied "for collateral estoppel, no, because I have the judgment from the first case. I have the orders." Dkt. 96 at 12. Regarding res judicata, SpeedTrack's counsel represented that they needed only limited discovery regarding any indemnification agreements between defendants and Endeca. Id. at 13. Towards the end of the hearing, the court told SpeedTrack's counsel that "if you need some additional discovery, you need to tell me what it is, and I'll assign a certain amount of time to complete it," and then asked "having heard the arguments, what do you need and why?" Id. at 24. SpeedTrack's counsel confirmed that he'd "like to have [a] deposition that we wanted to take before on these

3

[indemnification] agreements to know more about them and how they were being performed." Id. The court then confirmed, "One deposition for each of the four defendants. That's it?" to which SpeedTrack's counsel responded "yes." Id.

The parties then conducted discovery, and defendants now move for summary judgment on the same bases asserted in their motion to dismiss. Specifically, defendants argue that this court has already found that the accused Endeca technology (as used by Wal-Mart) does not infringe SpeedTrack's patent, and they now present evidence that they use the same Endeca technology in the same way. Defendants thus argue that SpeedTrack's claims of infringement are barred by (1) res judicata, or claim preclusion, (2) collateral estoppel, or issue preclusion, and/or (3) the Supreme Court's "Kessler doctrine."

**DISCUSSION**

A. Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential

element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material – the existence of only "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.  Legal Analysis

1.  Res judicata

Res judicata, or claim preclusion, prevents relitigation of a claim that has already been decided, and applies when "the earlier suit . . . (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005). Because the relevant "claim" in this case is one of patent infringement, this court must apply Federal Circuit law in order to determine "[w]hether two claims of infringement constitute the same claim or cause of action," as required by element (1) of the res judicata test. Brain Life, LLC v. Elekta Inc., -- F.3d --, 2014 WL 1139469, at *4 (Fed. Cir. 2014).

For claim preclusion to apply in a patent case, the alleged infringer must demonstrate that the accused product or process in the present case is "essentially the same" as the accused product/process in the earlier case. Nystrom v. Trex Co., 580 F.3d

5

1281,1285 (Fed. Cir. 2009). However, the Federal Circuit has recently held that claim preclusion bars only "the assertion of infringement . . . to the extent that the alleged acts of infringement <u>predate</u> the final judgment" in the earlier case, and does not bar claims relating to acts of infringement that post-date the judgment in the earlier case. <u>See</u> <u>Brain Life</u>, 2014 WL 1139469 at *6 (emphasis added). In other words, to the extent that SpeedTrack alleges that defendants have infringed its patent after the date of final judgment in <u>Wal-Mart</u>, that claim cannot be barred by res judicata, "regardless of whether the same transactional facts are present in both suits." <u>Id.</u>

The <u>Brain Life</u> court explained that "the claim that gives rise to preclusion encompasses only the particular infringing acts that are accused in the first action or could have been made subject to that action." 2014 WL 1139469 at *6 (citing <u>Aspex Eyewear Inc. v. Marchon Eyewear, Inc.</u>, 672 F.3d 1335, 1343 (Fed. Cir. 2012)). And because any post-judgment acts of alleged infringement could not have been raised in the first litigation, they cannot be barred in the second litigation.

As applied to the present case, SpeedTrack's allegations of infringement extend from July 12, 2001 (six years prior to the filing of the original complaint, as provided for by 35 U.S.C. § 286) until June 28, 2013 (the filing date of the operative First Amended Complaint). <u>See</u> Dkt. 100 at 17. SpeedTrack divides this time period up into two subgroups, arguing that res judicata does not apply to either, albeit for different reasons.

First, SpeedTrack argues that res judicata cannot apply to any infringement allegations between July 12, 2001 and May 25, 2007. SpeedTrack argues that the May 25, 2007 date is significant because, on that day, SpeedTrack filed its counterclaims against Endeca (who had intervened in the <u>Wal-Mart</u> suit). SpeedTrack argues that, during the 2001-2007 time frame, its claims against defendants "could not have been brought in the <u>Wal-Mart</u> action . . . because SpeedTrack could not blame Wal-Mart (or Endeca) for acts taken by Wal-Mart's competitors." Dkt. 100 at 16. However, SpeedTrack ignores defendants' argument that they are in privity with Endeca, by virtue of their indemnification agreements. That argument will be addressed more fully below, but if defendants are

6

correct, then SpeedTrack's claims against defendants (as privies of Endeca) can indeed be barred under res judicata.

Second, SpeedTrack argues that, because it never supplemented its pleadings to include ongoing infringing acts, "SpeedTrack's claims against Endeca ended as of May 25, 2007" (the date that its counterclaims against Endeca were filed). Dkt. 100 at 15-16, n.13. SpeedTrack thus argues that res judicata cannot apply to any infringement allegations between May 26, 2007 and June 28, 2013, because any alleged infringement occurred after its claims against Endeca had already ended. Dkt. 100 at 17.

The court finds no support for this position, as SpeedTrack has not shown why the court should afford any significance to the date of the filing of its claims against Endeca. The Brain Life court was clear in holding that the only significant date, for res judicata purposes, is the date of final judgment in the earlier case. 2014 WL 1139469 at *6; see also Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 761 (9th Cir. 1988) ("The date of judgment . . . controls the application of res judicata principles."). Even though SpeedTrack may have chosen not to assert claims of ongoing infringement against Endeca and Wal-Mart for any alleged acts occurring after May 25, 2007, it could have asserted such claims (at least through the date of final judgment), and as a result, it may still be barred from asserting them now (assuming defendants are able to establish all three res judicata elements). Final judgment in Wal-Mart was entered on March 30, 2012, so only allegations of defendants' infringement occurring after that date are insulated from res judicata, according to the principles articulated in Brain Life. As to SpeedTrack's allegations of infringement between July 12, 2001 and March 30, 2012, those claims may still be barred by res judicata.

As discussed above, for res judicata to apply, defendants must show (1) that this case involves the same claim or cause of action as Wal-Mart, (2) that Wal-Mart resulted in a final judgment on the merits, and (3) that Wal-Mart and this case involve identical parties or privies.

As to element (1), the court first notes that SpeedTrack accuses defendants of

infringement based on their use of the same Endeca technology that was found to be non-infringing in Wal-Mart. Defendants have presented evidence to show that each of them uses the Endeca platform in "essentially the same" way as Wal-Mart, and focus on the fact that they, like Wal-Mart, use numbers (rather than names) as a category descriptor. See Dkt. 98, Exs. D, E (CDW) (attaching human-readable version of Endeca file and declaring that "CDW does not change the format of the identified numeric field(s) in the Endeca file(s) identified above to be anything other than numeric"); Exs. F, G (Newegg) (attaching human-readable version of Endeca file and declaring that "Newegg does not change the format of the identified numeric fields in the Endeca file(s) identified above to be anything other than numeric"); Exs. H, I (Office Depot) (attaching human-readable version of Endeca file and declaring that "Office Depot does not change the format of the identified numeric fields in the Endeca file(s) identified above to be anything other than numeric"); Exs. J, K (PC Connection) (attaching human-readable version of Endeca file and declaring that "PC Connection does not change the format of the identified numeric field(s) in the Endeca file(s) identified above to be anything other than numeric").

Having reviewed the evidence submitted by defendants, the court finds that defendants, like Wal-Mart, use numbers rather than names as category descriptors. The court also notes that SpeedTrack has failed to rebut defendants' evidence, showing that their use of Endeca's technology is "essentially the same" as Wal-Mart's, with any evidence of its own showing that defendants use the technology in a materially different way. As discussed above, at the hearing on defendants' motion to dismiss, SpeedTrack's counsel represented that they had all the discovery needed for collateral estoppel purposes, and needed only a small amount of discovery, relating to the indemnification agreements between defendants and Endeca, as relevant to defendants' res judicata defense. SpeedTrack then deposed a representative of each defendant, and in addition to asking about the indemnification agreements, SpeedTrack also asked each defendant about its specific implementation of the Endeca platform. See Dkt. 100, Ex. 5 (deposition transcript of PC Connection's Steven C. Young); Ex. 6 (deposition transcript of Newegg's Robert

Wang); Ex. 7 (deposition transcript of Office Depot's Ancin Peter), Ex. 8 (deposition of CDW's Aric Lazar). Despite this deposition testimony, SpeedTrack has failed to identify any material differences between defendants' use of the Endeca platform and Wal-Mart's non-infringing use of the same platform. Instead, SpeedTrack relies on mere generalities, arguing that this suit involves "different activities," "different transactional facts," and "different users, methods, websites, software, and time periods." Dkt. 100 at 1. However, in the absence of any evidence that these differences are material, the court finds that defendants' use of the Endeca software is "essentially the same" as Wal-Mart's, and thus fails to literally infringe the patent-in-suit for the same reason.

SpeedTrack then argues that, even if its claims of literal infringement are barred, it may still assert claims of infringement under the doctrine of equivalents, because those claims were not asserted in Wal-Mart. However, res judicata "bars both claims that were brought as well as those that could have been brought." Brain Life, 2014 WL 1139469, at *5 (emphasis in original) (citing Mars Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 619-20 (Fed. Cir. 1995)). And the court finds that, even though SpeedTrack did not assert infringement under the doctrine of equivalents in Wal-Mart, it certainly could have. In fact, in the Wal-Mart case, SpeedTrack waited until after Wal-Mart had moved for summary judgment and after the court had held a hearing on the motion, and only then filed a motion for leave to amend its infringement contentions, seeking to add the doctrine of equivalents theory. The court denied SpeedTrack's motion, noting that it had waited almost six months after learning of Wal-Mart's non-infringement theory (via an interrogatory response) before seeking leave to amend its infringement contentions, and was thus unable to establish diligence. See Wal-Mart, Dkt. 357 (aff'd by SpeedTrack v. Endeca, 524 Fed.Appx. at 659). Thus, the court finds that SpeedTrack could have asserted infringement under the doctrine of equivalents in Wal-Mart. Accordingly, defendants have shown that this case involves the same claims that were involved in Wal-Mart, meeting element (1) of the test for applying res judicata.

SpeedTrack does not dispute that Wal-Mart resulted in a final judgment on the

merits, and thus, element (2) of the res judicata test is met here.

As to element (3), defendants argue that they are in privity with Endeca (a defendant in <u>Wal-Mart</u>) by virtue of their indemnification agreements. Each defendant has an indemnification agreement with Endeca whereby Endeca is obligated to "indemnify, defend, and hold harmless" the defendant for any loss arising out of a claim that the Endeca software "infringe[s] on the Intellectual Property Rights of any third party." <u>See</u> Dkt. 98, Ex. L (CDW), Ex. M (Newegg), Ex. N (Office Depot), and Ex. O (PC Connection). Neither party has presented Ninth Circuit authority on the issue of whether an indemnification agreement is sufficient to meet the "privity" requirement, but defendants do cite one out-of-district case with similar facts. <u>See</u> <u>Global Maintech Corp. v. AIG Technologies, Inc.</u>, 2006 WL 354224 (D. Minn. Feb. 15, 2006).

In <u>Global Maintech</u> (as in this case), a patent holder first asserted infringement claims against the developer of a software program (I/O Concepts), and then asserted infringement claims against a user of the same software program (AIG Technologies). The court held as follows:

> AIG is being sued in its capacity as a user of I/O Concepts' products, and plaintiffs were aware of AIG's use of I/O Concepts' products during the pendency of the I/O Concepts Action. Moreover, I/O Concepts is contractually obligated to and is controlling AIG's defense of the Present Action. In light of these facts, the court concludes that I/O Concepts and AIG are in privity with one another for purposes of this litigation . . . Thus, AIG has, as a matter of law, satisfied its burden of establishing this part of the third element of res judicata.

2006 WL 354224, at *3.

SpeedTrack counters by pointing to another provision in each of the indemnification agreements, stating that "[n]othing contained in this Agreement shall be deemed to imply or constitute that either Party is the agent or <u>representative of the other Party</u>, or that both parties are joint ventures or partners for any purpose." Dkt. 100, Ex. 21 at § 12.10 (Office Depot); Ex. 22 at § 12.10 (PC Connection); Ex. 23 at § 12.10 (Newegg); and Ex. 24 at § 12.10 (CDW) (emphasis added by SpeedTrack). SpeedTrack further points out that defendants have repeatedly redacted these provisions when filing the agreements with the

10

court.

While the court agrees with SpeedTrack that section 12.10 should not have been redacted from defendants' filings, the court finds that this section does not undermine the persuasive effect of Global Maintech. Section 12.10 merely sets an outer limit on the relationship between Endeca and defendants – while Endeca is obligated to indemnify defendants for any losses incurred in intellectual property suits such as this (pursuant to section 9 of the contract), it does not represent them in any broader manner (e.g., Endeca cannot enter into contracts on behalf of defendants, or vice versa). The court finds that, for the purposes of the privity analysis, only the parties' relationship with respect to the relevant lawsuits matters. See Transclean Corp. v. Jiffy Lube Int'l, Inc., 474 F.3d 1298, 1306 (Fed. Cir. 2007) ("privity exists when the parties are so closely related and their interests so nearly identical that it is fair to treat them as the same parties for the purposes of determining the preclusive effect of the first judgment.") (emphasis added); see also In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) ("Privity – for the purposes of applying the doctrine of res judicata – is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.") (emphasis added). Again, the court notes that defendants have unnecessarily complicated the issue by attempting to hide section 12.10 of the indemnification agreements, but even after considering that provision, the court finds that the reasoning of Global Maintech is persuasive, and thus applies it to this case. Because Endeca is contractually obligated to indemnify defendants for any losses stemming from a finding of infringement, the court finds that the parties are in privity[1], and thus element (3) of

---

[1] The court also notes that SpeedTrack, in an attempt to prevent defendants from presenting new arguments on claim construction, has argued that "Endeca adequately and fully represented defendants' interests in the earlier claim construction proceedings and that this court's prior rulings . . . will apply." Dkt. 59 at 7. SpeedTrack also sought to prevent defendants from raising certain affirmative defenses that were raised in Wal-Mart, arguing that it "may file a motion seeking a ruling that defendants are in privity with Endeca and therefore collateral estoppel applies to the court's claim constructions and its grant of partial summary judgment on defendants' section 102(a) and 102(b) defenses in the Walmart.com action." Id. at 8. SpeedTrack appears to take the position that the privity requirement is met when it

11

the res judicata test is met.

Accordingly, to the extent that SpeedTrack's claims of infringement are based on acts occurring on or prior to March 30, 2012 (the date of final judgment in Wal-Mart), the court finds that they are barred by principles of res judicata.

### 2. Collateral estoppel

The application of collateral estoppel is appropriate only where (1) there was a full and fair opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. Syverson v. Int'l Business Machines Corp., 472 F.3d 1072, 1078 (9th Cir. 2007).

The court need not address all four elements here, because it finds that defendants are unable to meet element (2). While SpeedTrack could have raised its theory of infringement under the doctrine of equivalents in Wal-Mart (for the reasons discussed above), its lack of diligence in asserting that theory prevented it from actually raising the issue in Wal-Mart. Thus, the court finds that the issue of infringement under the doctrine of equivalents was not "actually litigated," and thus, collateral estoppel does not bar SpeedTrack's claims that defendants infringed the patent-in-suit under the doctrine of equivalents.

### 3. Kessler doctrine

The Kessler doctrine is based on the Supreme Court case of Kessler v. Eldred, 206 U.S. 285 (1907). In Kessler, the owner of a patent related to electric lighters (Eldred) filed an infringement suit against a competitor in the lighter business (Kessler). Kessler, the alleged infringer, succeeded in proving that his lighter did not infringe Eldred's patent. Eldred then filed suit against a customer of Kessler's, who sold the same lighters that were at issue in the first action. Kessler intervened to indemnify his customer, and also filed a

---

comes to favorable rulings, but is not met when it comes to unfavorable rulings. SpeedTrack cannot have it both ways.

12

separate suit against Eldred, seeking to enjoin Eldred from asserting infringement suits against any of his customers for the use of the same lighter that had already been adjudged to be non-infringing.

The Supreme Court agreed with Kessler, and found that the final judgment in the first case "settled finally and everywhere . . . that Kessler has the right to manufacture, use, and sell" his electric lighter. 206 U.S. at 288. In other words, by prevailing in the first suit, Kessler had immunized his electric lighter from any future infringement suits brought by Eldred. Kessler was thus free to sell his lighters to other retailers, who could now re-sell the Kessler lighters without fear of an infringement suit brought by Eldred.

SpeedTrack correctly notes that Kessler was decided in 1907, before the Supreme Court had recognized the principle of non-mutual collateral estoppel. In SpeedTrack's view, the development of non-mutual collateral estoppel has now made the Kessler doctrine obsolete, because any sellers of a product deemed to be non-infringing can now rely on collateral estoppel to bar a suit brought by the patent holder, by establishing the four factors articulated above (that (1) there was a full and fair opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated, (3) the issue was decided in a final judgment, and (4) the patent holder was a party or in privity with a party to the prior action). SpeedTrack points to the fact that, at the time that its opposition brief was filed, "the Federal Circuit has applied Kessler effectively only once in its past thirty years of published decisions." Dkt. 100 at 2 (emphasis in original).

However, the Federal Circuit has very recently issued another to-be-published decision demonstrating that Kessler is still in force, and specifically finding that it "precludes some claims that are not otherwise barred by claim or issue preclusion." Brain Life, 2014 WL 1139469 at *8. The Brain Life court acknowledged that the Kessler doctrine's "viability under current estoppel law may be of less value now than it was at the time it was handed down," but ultimately concluded that it "exists" and was "directly applicable to the case at bar." Id. at *10-11.

In Brain Life, the plaintiff in a prior litigation (Medical Instrumentation Diagnostics

13

Corporation, or "MIDCO") had accused defendant Elekta of infringing its patent. Specifically, MIDCO accused Elekta of infringing both the patent-in-suit's apparatus claims and its method claims. 2014 WL 1139469 at *1 (internal citation omitted). However, as the case progressed, MIDCO focused on its apparatus claims and neglected the method claims. Id. at *2. Only terms from the apparatus claims were construed by the district court, and just before trial, Elekta requested that the court dismiss the method claims from the case. Id. MIDCO did not oppose the request, and the court dismissed the method claims without prejudice. Id. At trial, the jury found that Elekta did infringe the apparatus claims, but on appeal, the infringement finding was reversed, and the case was remanded so that the district court could enter a judgment of non-infringement as a matter of law. Id. at *2.

On remand, MIDCO attempted to revive the method claims that had been dismissed from the suit. 2014 WL 1139469 at *3. However, the district court refused to reopen the case and entered final judgment in favor of Elekta. Id. MIDCO appealed that refusal, but the Federal Circuit affirmed the decision not to reopen the case. Id.

After the MIDCO suit ended, MIDCO licensed the patent-in-suit to another company, which then licensed the patent to Brain Life. 2014 WL 1139469 at *3. Brain Life then filed suit against Elekta, seeking to assert the method claims that were dismissed prior to trial in the MIDCO case. Id. The district court in the Brain Life case ordered discovery on the issue of whether the accused products were "essentially the same" as the accused products in MIDCO, and after Elekta presented evidence that the products were materially the same, the court granted summary judgment based on res judicata. Id.

On appeal, the Federal Circuit reversed the district court's decision to the extent that it was based on res judicata, but it found that Brain Life's claims were barred based on the Kessler doctrine. 2014 WL 1139469 at *7, 11. The court found that "once the accused devices in the MIDCO litigation were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, Elekta was free to continue engaging in the accused commercial activity as a non-infringer." Id. at *11. The court also

emphasized that "[w]hile MIDCO ultimately abandoned the method claims prior to trial, it could have continued to assert those claims." Id. Thus, "by virtue of gaining a final judgment of non-infringement in the first suit – where all of the claims were or could have been asserted against Elekta – the accused devices acquired a status as non-infringing devices, and Brain Life is barred from asserting that they infringe the same patent claims a second time." Id.

The Brain Life court emphasized that the applicability of the Kessler doctrine depends on the specific accused product, not on the identity of the party seeking to invoke the doctrine:

> [W]hen an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the "status" of a noninfringing device. . . The status of an infringer is derived from the status imposed on the thing that is embraced by the asserted patent claims. And, when the devices in the first and second suits are "essentially the same," the "new" product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies.

2014 WL 1139469 at *10 (emphasis in original) (internal citations omitted).

The court finds that the Kessler doctrine, as applied by the Brain Life court, is directly applicable to this case. By virtue of the Wal-Mart decision, the accused Endeca technology acquired the status of a non-infringing product. And defendants in this case have shown that their implementation of the Endeca software is "essentially the same" as the implementation adjudged to be non-infringing in Wal-Mart – specifically, defendants have shown that they use numbers, rather than names, as category descriptors. SpeedTrack has had an opportunity to rebut defendants' showing, and has taken discovery regarding defendants' use of the Endeca software (despite representing to the court that it needed no discovery on the issue), but has been unable to identify any material differences between defendants' use of the software and Wal-Mart's non-infringing use of the same software. SpeedTrack largely relies on the argument that it has not yet litigated the issue of whether defendants' use of the Endeca technology infringes under the doctrine of equivalents, but the Federal Circuit has made clear that the Kessler doctrine bars all subsequent assertions of the same patent. 2014 WL 1139469 at *11 (accused products

15

"have acquired the status of noninfringing products as to the '684 patent, i.e., all claims that were brought or could have been brought in the first suit.") (emphasis in original). Certainly, if the Kessler doctrine bars the assertion of new claims, it must also bar the assertion of new theories involving the same, already-asserted claims.

In short, by failing to prevail in its infringement suit against Wal-Mart, SpeedTrack lost the right to assert any claims of the '360 patent against any customers of Endeca who use the accused software in "essentially the same" manner as did Wal-Mart. Defendants have shown that they do indeed use the software in "essentially the same" way, and as a result, the entirety of SpeedTrack's suit is barred by the Kessler doctrine.

4. Motion to seal

In connection with its opposition brief, SpeedTrack filed a motion to seal portions of its brief and certain exhibits containing defendants' confidential information. Defendants did not file a supporting declaration, as required by Civil Local Rule 79-5(e), "establishing that all of the designated material is sealable." As a result, the motion to seal is DENIED, and SpeedTrack is directed to file unredacted versions of its opposition brief and supporting exhibits no later than **May 13, 2014**.

## CONCLUSION

Having found that SpeedTrack's infringement claims are barred by res judicata, to the extent that they cover alleged acts occurring on or before March 30, 2012, and having found that SpeedTrack's infringement claims are wholly barred by the Kessler doctrine, the court hereby GRANTS defendants' motion for summary judgment as to all claims asserted by SpeedTrack.

**IT IS SO ORDERED.**

Dated: May 6, 2014

PHYLLIS J. HAMILTON
United States District Judge